SHERWOOD PERRY, Administrator of the Estate of JAMES PERRY, Deceased v. C. P. GIBSON.

(Filed 20 November, 1957)

**Arrest and Bail § 3: Death § 3—**

In an action for wrongful death growing out of the mortal wounding of intestate in a scuffle while a police officer was attempting to arrest

him, an instruction that the officer had the right to make the arrest without a warrant if intestate had committed a misdemeanor in his presence or if the officer had reasonable grounds to believe that intestate had committed a misdemeanor in his presence must be held for prejudicial error in failing to give further instructions that the jury and not the officer must be the judge of the reasonableness of the grounds on which the officer acted. G.S. 15-41 (a).

APPEAL by plaintiff from *Hall, J.,* February Civil Term 1957 of FRANKLIN.

This is a civil action to recover damages from the defendant for the alleged wrongful death of plaintiff's intestate.

The defendant, a police officer of the Town of Franklinton, North Carolina, and constable for Franklinton township, shot and killed plaintiff's intestate under the circumstances hereinafter set out.

The evidence tends to show that Charlie McKnight, around 10:00 p.m. on 5 March 1956, drove his automobile from Water Street into Main Street in the Town of Franklinton at an excessive rate of speed, and proceeded south on the left-hand side of Main Street at an excessive rate of speed. The defendant Gibson gave chase in a marked police car. McKnight's car continued to a roadhouse a short distance out of town; finding the place closed, he turned his car around and proceeded back towards town. He met the defendant Gibson, who turned around on the highway and stopped McKnight about 150 yards from the town limits. The plaintiff's intestate was in the front seat with McKnight. The defendant testified that he asked McKnight for his driver's license; that McKnight got out of his car and showed him his license. He asked him why he drove so recklessly when he came out of Water Street; that McKnight cursed and said "that they were not driving reckless." Perry got out of the car on the other side and said, "No d.........n body has drove reckless." That he put them both under arrest and told them to go to the police station, and he drove in behind them. They did not go to the police station, but stopped at the old police department, although Perry knew the department had been moved; that when they stopped, Gibson parked his car and got out; that "Perry got out, cursing and went across the street, I called him and asked him where he was going. He didn't listen to me the first time. Then he said, 'What in the g......... d.........n hell do you want with me?'" This witness further testified that Perry had his hand in his pocket; that he asked him to take his hand out of his pocket, and he said, "I am not going to do it." (Defendant testified that when he first stopped McKnight's car, he saw Perry take something from the seat of the car and put it in his right-hand pocket.) That

he took hold of Perry's hand and pulled it out of his pocket; that Perry had his knife open in his hand and about the time he got his hand out of his pocket he struck at him and cut him across his hand. That while crossing the street, this officer testified, he had taken his gun out of his holster and was holding it in his left hand; that when he grabbed the knife, Perry turned it loose and grabbed the barrel of the gun. "When he grabbed the gun, we got down. I was trying to keep him from taking it away from me. I asked him to turn it loose. We were down just like two cows butting heads. He had hold of the barrel of the gun. In the tussle I jerked the gun and it went off accidentally the first time. When he hit me beside the head and knocked my cap and glasses off, I pulled it (the gun) a couple more times. * * * I was just about out of wind and had to do something. I was cut on the hand in the scuffle with a knife and ever since then I have had a ruptured disc and have been down in my back * * *."

The defendant further testified that he placed McKnight and Perry under arrest for disorderly conduct. He also testified that he put McKnight under arrest for reckless driving, and, further that when he got across the street where the tussle took place, "I placed him (Perry) under arrest for disorderly conduct."

The plaintiff offered the testimony of witnesses who were some distance from Gibson and Perry, some of whom testified that a tussle did take place between the officer and Perry.

The case was submitted to the jury on the following issues: 1. Did the defendant wrongfully and unlawfully assault and kill the plaintiff's intestate, James K. Perry, as alleged in the complaint? 2. If so, what amount of damages, if any, is plaintiff entitled to recover of the defendant? The jury answered the first issue "No."

The plaintiff appeals, assigning error.

*Taylor & Mitchell, for plaintiff appellant.*
*Arendell & Green, Alton T. Cummings, for defendant appellee.*

DENNY, J. The plaintiff assigns as error the failure of the trial court to instruct the jury "that the jury and not the defendant is the judge of whether or not the defendant had reasonable grounds to believe that a misdemeanor had been committed in the presence of the defendant."

The court read G.S. 15-41, as amended by Chapter 58 of the Session Laws of 1955, to the jury, and instructed the jury "that while it is not necessary that a crime, a misdemeanor, or a felony actually has been committed in the officer's presence, in order to justify the officer's making an arrest, it is necessary

that the officer have reasonable grounds to believe that an offense has been committed in his presence, in order for him to make a lawful arrest."

The trial judge likewise instructed the jury "that under the laws of this State, a peace officer, that is a police officer, has a right to make an arrest without a warrant if there is a breach of the peace or a threatened breach of the peace in the presence of the officer. * * * To have a breach of the peace there must be a disturbance of public order and tranquility by act or conduct not merely amounting to unlawfulness but tending also to create public tumult and incite others to break the peace. To justify an arrest on ground of necessity to suppress a breach of the peace the conduct of the person arrested must amount to an act or breach of the peace in the presence of the person making the arrest. To justify an arrest in order to prevent a breach of the peace ordinarily there must be at least a threat of a breach of the peace, together with some overt act in attempted execution of the threat."

The court further instructed the jury "that where an officer has the right to make an arrest, that is where there is a breach of the peace in his presence or a threatened breach of the peace in his presence, or if he has reasonable grounds to believe that a misdemeanor has been committed in his presence, where one has in fact been committed or not, if he has reasonable grounds to so believe, then I instruct you that officer making an arrest may meet force with force sufficient to overcome any force offered by the person to be arrested, even to the taking of life, if necessary, and the officer is not required to afford the person arrested an equal opportunity."

The vice of the charge is to the failure of the court to apply the law to the facts in the case (*Chambers v. Allen*, 233 N.C. 195, 63 S.E. 2d 212) and to instruct the jury that the defendant had the right to arrest James K. Perry, without a warrant, at the time in question, if Perry had committed a misdemeanor in his presence, or if the defendant had reasonable grounds to believe that he had committed a misdemeanor in his presence; but the jury and not the defendant must be the judge of the reasonableness of the grounds on which the defendant Gibson acted. *S. v. McNinch*, 90 N.C. 695; *S. v. Bland*, 97 N.C. 438, 2 S.E. 460; *S. v. Pugh*, 101 N.C. 737, 7 S.E. 757; *Sigmon v. Shell*, 165 N.C. 582, 81 S.E. 739; G.S. 15-41 (a). *Cf. S. v. Mobley*, 240 N.C. 476, 83 S.E. 2d 100, in light of the amendment to G.S. 15-41.

In our opinion, the plaintiff is entitled to a new trial and it is so ordered.

New Trial.