**W. T. JACKSON and Joe Solis,
Appellants,**

v.

**William DUKE, Appellee.**

**No. 17099.**

United States Court of Appeals
Fifth Circuit.

Aug. 27, 1958.

J. F. Park, I. M. Singer, Vernon D. Harville, Corpus Christi, Tex., for appellants.

Fred C. Reeder, Corpus Christi, Tex., for appellee.

Before TUTTLE, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This case arises under the Civil Rights Act, 42 U.S.C.A. § 1983.[1] William Duke, appellee, sued "W. C." (W. T.) Jackson and Joe Solis for damages for an unlawful assault upon him "under color of law * * * acting in their official capacity as police officers of the City of Corpus Christi, Texas." The complaint alleges, and the evidence supports the allegations, that the assault was unprovoked and brutal.[2] The jury found "for the plaintiff and against the defendants for $5,000". The trial court entered judgment against defendants, jointly and severally, for $5,000. We affirm this judgment.

## I.

The two year statute of limitation[3] expired the same day suit was filed, April 29, 1957. At the plaintiff's request, summons was not issued "forthwith", as provided in Rule 4(a), F.R.Civ.P., 28 U.S. C.A., since the plaintiff's counsel had only two copies of the complaint; the clerk of court advised him that additional copies were needed. The following day a newspaper account of the suit brought out the fact that Jackson's initials were "W. T." not "W. C.". Plain-

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979." 42 U.S.C.A. § 1983.

2. April 29, 1955, William Duke, a young man of twenty-three, was sitting in Lila's Tavern in Corpus Christi, Texas, having a coca cola and fritos with another young man. The time was eight o'clock in the evening. Jackson and Solis, in civilian clothes, entered the tavern. According to testimony for the plaintiff, Solis walked up to Duke and said, "What is your God damn name?" Duke wanted to know who Solis was. Jackson was standing behind Duke. Neither identified themselves as police officers. Jackson said, "I don't have to show you a God damn thing", and he struck Duke on the head with either a blackjack or a pistol. At this point, with more valor than discretion, Duke started swinging. Solis grabbed Duke's arms while Jackson pounded Duke's head with a pistol. He fell to the ground. Solis kicked him in the throat and face. Jackson twisted Duke's arm behind his back. They took him outside, knocked him down, kicked him in the head, and stomped him in the stomach and shoulder. He was put in the rear seat of Jackson's automobile. Solis kept his loaded pistol pointed at him. Over protests, Solis removed ten dollars from Duke's wallet. Duke was driven to Memorial Hospital, where stitches were taken in a gash, about an

inch and a half long, above his eye and he was given other treatment. He was taken to jail, charged with being drunk in a public place, and convicted in the police court (Corporation Court) of the City of Corpus Christi. Later, on appeal, the County Court of Nueces County, Texas, dismissed the proceedings against Duke. Duke's mother and brother testified, as did he, that he did not smoke or drink (except for an occasional beer); that he never touched marijuana. The owner of the tavern testified that Duke and his friend had ordered soft drinks. A Red Cross nurse who was present at the hospital testified that Duke was not drunk. That is Duke's story.

The defendant's story is that they were looking for a marijuana suspect, and that Duke provoked an ordinary barroom brawl by calling Solis a "God damn Mexican". They say that they used no more force than was necessary to subdue Duke. They contend that Duke was drunk and produced police officers, the doctor and two nurses at the hospital to prove it. Neither the doctor nor the nurses testified that they smelled liquor on Duke's breath. They based their conclusion on his actions. Defendants claim that Duke's account of their alleged brutality and the severity of his injuries is greatly exaggerated.

3. "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterwards, all actions or suits in court of the following description: * * *

"2. Actions for detaining the personal property of another, and for converting such property to one's own use * *

"6. Action for injury done to the person of another." Article 5526, Vernon's Revised Civil Statutes of Texas.

tiff's counsel conferred with the Court in regard to this misnomer, allegedly a stenographic error. May 8, 1957, as suggested by the Court, Duke filed an amended complaint giving Jackson's correct initials. As stated in a memorandum opinion of the trial judge, "the fact allegations [in the amended complaint] are slightly more in detail than in the original complaint but largely are a repetition of previous allegations". Process issued immediately upon the filing of the amended complaint. Defendants were served, and answered on May 28, 1957.

Defendants make three contentions as to the complaint. (A) The action was barred as to both defendants by the statute of limitations, since suit was not "commenced and prosecuted" within two years. (B) As to Jackson, the statute was not tolled and the action cannot be maintained on an amended petition correcting a misnomer after the statute has run. (C) The original complaint does not allege that the court has jurisdiction under the Civil Rights Act; it alleges a common law action for assault. Since the amended complaint alleges a different cause of action, it cannot be considered as "relating back" to the date of the filing of the original complaint.

■ (A) In a memorandum opinion the able trial judge considered carefully the defendant's general plea of limitation. From the time suit was filed, the trial judge was close to the facts bearing on plaintiff's good faith prosecution of the action. We adopt as our views the opinion of the district court:

"Under all the decisions, state limitation laws control as to the time within which an action must be commenced; and in *diversity* actions state law controls as to what constitutes 'commencement'— under Texas decisions an action must be commenced *and prosecuted* within the applicable period; and, *in the absence of a valid excuse for delay*, the statute runs until process is issued and service obtained if the plaintiff by some affirmative act or declaration is responsible for de-lay in having citation issued and served, or if a bona fide attempt is not made to obtain service. Byrd v. Bates, 5 Cir., 1957, 243 F.2d 670.

"In an action under the *civil rights statute*, while state law controls as to the time within which an action must be begun, the manner in which it is *commenced* and *when it is deemed to have begun,* being procedural and not substantive, is covered by the Federal Rules of Civil Procedure. Mohler v. Miller, 6 Cir., 1956, 235 F.2d 153; Bomar v. Keyes, 2 Cir., 1947, 162 F.2d 136. These cases indicate that a plaintiff's conduct subsequent to the filing of the complaint may be such as to indicate an *abandonment*— a test similar to, but hardly as exacting as, that of reasonable diligence in obtaining service under the Texas rule set out in Byrd v. Bates, supra. Here there is no indication of abandonment by plaintiff or unreasonable delay. The facts enumerated above disclose a valid excuse for not causing the summons to be issued until the amended complaint was filed on May 8, 1957. Process issued thereon 8 days later and service was secured 9 days later. So the general plea of limitation must be overruled."

■ (B) The effect of a misnomer is governed by the Federal Rules of Civil Procedure. Grandey v. Pacific Indemnity Company, 5 Cir., 1954, 217 F.2d 27. Rule 4(h) provides: "At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." Rule 15(a) allows a plaintiff to "amend his pleading once as a matter of course at any time before a responsive pleading is served". Otherwise leave of court is required, but "leave shall be freely given when justice so requires". Rule 15(c) provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in

the original pleading, the amendment relates back to the date of the original pleading." In interpreting these liberal rules in the Grandey case, we quoted from 2 Moore's Federal Practice (2nd Ed.), Sec. 4.44, p. 1042 as follows [217 F.2d 29]: "The test should be whether, on the basis of an objective standard, it is reasonable to conclude that the plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether plaintiff actually meant to serve and sue a different person." In the Grandey case the plaintiff sued Pacific Indemnity *Insurance* Company and incorrectly described it as a Massachusetts corporation. In fact, it was a California corporation and its correct name was Pacific Indemnity Company. See also United States v. A. H. Fischer Lumber Co., 4 Cir., 1947, 162 F.2d 872.

The trial court had no doubt that the defendant W. T. Jackson was the party intended to be sued. Since the right party was before the court, although under a wrong name, the trial judge properly allowed the amendment to cure the misnomer. Like any other amendment, under Rule 15(c) it relates back to the date of the filing of the original complaint. There is no merit therefore to the argument that the plaintiff's action was barred as to the defendant W. T. Jackson.

■ (C) Appellants argue that the original complaint did not allege that the court had jurisdiction under 28 U.S.C.A. § 1343, the codal section conferring original jurisdiction on federal courts to try civil rights cases. This comes very close to a quibble. The original complaint alleges that the court has jurisdiction under 42 U.S.C.A. § 1983, the section creating an action for deprivation of civil rights. There are several specific allegations that "the defendants acting in their official capacity as police officers of the city" and "under color of law" assaulted the plaintiff, beat him,

arrested him, illegally searched him, put him in jail, and deprived him of his liberty. These allegations make out a prima facie case for federal jurisdiction based on a complaint alleging deprivation of civil rights.

It is not necessary that the complaint negative every inference leading to lack of jurisdiction; for example, that the defendants might in fact have been acting under color of federal law. The defendants had their day in court to show that on the facts, this was a barroom brawl between private persons, not a civil rights case. The record and the complaint are against them on this point.

II.

In 1952, while employed by the Texas and New Orleans Railroad Company, Duke was struck on the head by a large hammer that fell from a slanting roof, causing him to fall off a ladder. A bundle of shingles and roofing material fell on top of him. The resulting injuries were somewhat similar to those allegedly suffered in this case. April 19, 1956, Duke released the railroad for $8,000. Appellants claim that in the instant case the jury had no basis for determining the extent of Duke's alleged injuries caused by the defendants' actions.

■ There is evidence in the record showing that Duke was pistol-whipped, knocked down and stomped, kicked in the face, throat, and stomach, falsely arrested, falsely accused of drunkenness, unlawfully jailed. Now, his assailants say that they are not liable because he cannot prove precisely where his injuries from the 1952 accident ended and where his injuries from their misconduct began. Damages for the injuries Duke suffered here are not so susceptible of exact evaluation that he should be required to draw a precise line between the old and new injuries. A line belongs somewhere. It is for the jury to draw it. Here the jury drew a line and valued his damages on this side of it at $5,000. We consider it a reasonable finding, fully supported by the evidence in the record.

### III.

We have considered appellants' other contentions. We find them without merit.

The judgment is

Affirmed.