Luther G. SCOTT, Jr., Appellee,

v.

Harold VANDIVER, Sheriff of Abbeville County, South Carolina, and George M. McMahan, Supervisor of Abbeville County, South Carolina, Appellants.

Luther G. SCOTT, Jr., Appellee,

v.

Ray McMAHAN, Appellant.

Nos. 72–1760, 72–1761.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1972.

Decided March 16, 1973.

Joseph E. Major, Greenville, S. C. (J. D. Todd, Jr., Greenville, S. C., and William P. Greene, Jr., Abbeville, S. C., on brief), for Harold Vandiver and George McMahan.

C. Rauch Wise, Greenville, S. C., for Ray McMahan.

Karl L. Kenyon and G. Ross Anderson, Jr., Anderson, S. C., for Luther G. Scott, Jr.

Before HAYNSWORTH, Chief Judge, and BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Harold W. Vandiver, George Mc-Mahan, and Ray McMahan appeal[1] from a judgment holding them liable under 42 U.S.C. § 1983 (1970)[2] for an assault against Luther G. Scott, Jr. They assert that the district court should have required Scott to exhaust available state judicial remedies before proceeding under § 1983; that the trial judge made erroneous findings of fact and conclusions of law; that they were not acting "under color of" state law; that neither Harold W. Vandiver, the county sheriff, nor George McMahan, the county supervisor, was responsible for the acts of James Hunter and Ray McMahan; and that the damages awarded by the district court were excessive. We affirm on all issues except the judgment against supervisor George McMahan.

The defendant's threshold contention that the district court should have required Scott to exhaust state remedies is without merit. A § 1983

---

1. James Hunter, a fourth defendant, did not file any responsive pleading to Scott's complaint, but he testified as a witness for the defendants. The district court entered a default judgment against him from which he did not appeal.

2. 42 U.S.C. § 1983 (1970) provides:
    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

claimant does not have to exhaust state judicial remedies before pursuing his federal cause of action. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

## I

Although the evidence conflicted on many points, there was ample testimony to support the trial judge's acceptance of the following version of the facts, and we are bound by his findings under Rule 52 of the Federal Rules of Civil Procedure. On July 23, 1970, the Calhoun Falls police reported to Sheriff Vandiver that a woman had been shot within his jurisdiction. Before going to the house where the shooting occurred, the sheriff drove to the county farm to pick up some bloodhounds. While there, he requested two county employees, James Hunter and Ray McMahan, to assist him in his investigation. Hunter and McMahan got in McMahan's truck and followed the sheriff's vehicles.

Not far from the scene of the reported shooting,[3] Scott was walking along the side of the road, going from his home to his brother's home. Scott did not resemble the person suspected of the crime, but when Hunter and McMahan saw him, they stopped and told him to get in the truck with them to go to the sheriff. They did not identify themselves or explain the authority for their orders. While the two men were talking to him, Scott saw a gun on the seat of the truck and immediately began to run. Hunter and McMahan both jumped out of the truck to chase him, and Hunter fired his gun in Scott's direction.

As Scott fled, he fell and severely injured his shoulder, but he regained his feet and reached his brother's house. His brother came out of the house armed with a shotgun and asked the men why they were shooting at Scott. Without explanation, the men returned to the truck and sped off towards the house where the sheriff was investigating the crime they had erroneously suspected Scott of committing. They told the sheriff of their encounter with Scott, and he, realizing that Scott was not a suspect, sent one of his deputies to find out what had happened.

■ The evidence justifies the district court's finding that Ray McMahan was a joint participant with Hunter. Likewise, it supports the finding that Hunter and Ray McMahan used "excessive force and oppression in the attempted unlawful apprehension and arrest of [Scott]." The record negates the common law defenses of good faith and probable cause, which under other circumstances may be available in § 1983 actions. See Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Hill v. Rowland, 474 F.2d 1374 (4th Cir. 1973).

## II

The defendants contend that Scott is not entitled to recover under § 1983 because Hunter and Ray McMahan were not acting "under color of" law when they assaulted Scott. Hunter insisted that he was exercising his right as a citizen when he discharged his pistol and gave chase to Scott.

With respect to this issue, the evidence supported the district court's findings: the supervisor and sheriff had a long-standing agreement that county employees would assist the sheriff if he made a request through proper channels; Ray McMahan had previously assisted the sheriff on manhunts; the sheriff told Scott's relatives that Hunter and Ray McMahan were assisting him in response to his request; and neither McMahan nor Hunter was disciplined for the assault.

■ English common law, which remains the law of South Carolina unless changed by statute,[4] authorized a

---

3. Apparently no crime was ever committed. The sheriff testified that following his investigation he concluded that the woman had shot herself.

4. State v. Charleston Bridge Co., 113 S.C. 116, 101 S.E. 657, 660 (1919).

sheriff to summon bystanders to assist him in apprehending felons. 1 Blackstone, Commentaries* 343; *see also* Sutton v. Allison, 47 N.C. 339, 341 (1855). The sheriff's authority is implicitly recognized in S.C.Code Ann. § 53–199 (1962),[5] which empowers a deputy sheriff to call out a *posse comitatus* to assist in arresting suspected violators of the law. It is apparent that this statute supplements, rather than supersedes, the common law. To hold otherwise would irrationally confer on a deputy sheriff powers greater than the sheriff's.

■■ The trial court's findings and South Carolina law support the conclusion that Hunter and Ray McMahan were temporary state law enforcement officers when they assaulted Scott. Their status brings them squarely within § 1983. Borrowing from cases[6] construing a related criminal statute, the Supreme Court has ruled that the phrase "under color of" state law embraces "[m]isuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law

. . . ." Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). *Monroe* held that the victim of police misconduct had a § 1983 claim against the police who violated his federally secured rights. Other federal courts have followed *Monroe's* interpretation of § 1983 by awarding compensation to the victims of unlawful police assaults.[7]

It is immaterial whether the status of Hunter and Ray McMahan was created directly by the state's *posse comitatus* law or whether it arose out of the sheriff's custom of enlisting county employees to assist in manhunts. A custom may support a § 1983 claim if it has "the force of law." Adickes v. Kress & Co., 398 U.S. 144, 162, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Here the sheriff's common law powers to summon bystanders infused his custom of using county employees in manhunts with the force of law.[8]

### III

■ Sheriff Vandiver asserts that he is not responsible for the assault

---

5. S.C.Code § 53–199 (1962) provides:

> "*May call out posse comitatus; penalty for refusing to assist.*—Any sheriff, deputy sheriff, constable or other officer specially empowered may call out the bystanders or posse comitatus of the proper county to his assistance whenever he is resisted or has reasonable grounds to suspect and believe that such assistance will be necessary in the service or execution of process in any criminal case and any deputy sheriff may call out such posse comitatus to assist in enforcing the laws and in arresting violators or suspected violators thereof. Any person refusing to assist as one of the posse comitatus in the service or execution of such process, when required by the sheriff, deputy sheriff, constable or other officer shall be liable to be indicted therefor and upon conviction shall be fined and imprisoned, at the discretion of the court and any person who shall fail to respond and render assistance when summoned by a deputy sheriff to assist in enforcing the laws and in arresting violators or suspected violators thereof shall be guilty of a misdemeanor

and, upon conviction shall be fined not less than thirty nor more than one hundred dollars or imprisoned for thirty days."

6. Williams v. United States, 341 U.S. 97, 99, 71 S.Ct. 576, 95 L.Ed. 774 (1951); Screws v. United States, 325 U.S. 91, 112, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941).

7. Jenkins v. Averett, 424 F.2d 1228, (4th Cir. 1970); Collum v. Butler, 421 F.2d 1257 (7th Cir. 1970); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Jackson v. Duke, 259 F.2d 3 (5th Cir. 1958). *Cf.* York v. Story, 324 F.2d 450 (9th Cir. 1963).

8. In view of our conclusion that the status of Hunter and Ray McMahan, as temporary state law enforcement officers, subjects them to liability under § 1983, we need not consider the alternative theory that they subjected themselves to liability by willfully participating in the manhunt with the sheriff. *Cf.* United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

committed by Hunter and Ray McMahan because the doctrine of respondeat superior should not be applied to actions brought under § 1983. We need not, however, examine the applicability of the doctrine[9] because it is not essential to the sheriff's liability. As shown in Part II, the sheriff acted under color of South Carolina law when he requested Hunter and Ray McMahan to assist him in the manhunt, and they in turn acted under color of state law when they assaulted Scott. It is appropriate, therefore, to look to South Carolina law to ascertain the sheriff's responsibility for the actions of his subordinates. 42 U.S.C. § 1988 (1970).[10] The Court of Appeals for the Sixth Circuit recently relied on state law to sustain an award of punitive damages against a Tennessee sheriff for an assault committed by his deputy. McDaniel v. Carroll, 457 F.2d 968, 969 (6th Cir. 1972); *accord* Hesselgesser v. Reilly, 440 F.2d 901 (9th Cir. 1971) (compensatory damages); Lewis v. Brautigam, 227 F.2d 124 (5th Cir. 1955) (compensatory damages). Other examples of the extension of state law to § 1983 actions are familiar: federal courts apply state statutes of limitations to § 1983 claims, O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914), Almond v. Kent, 459 F.2d 200, 203 (4th Cir. 1972); state law insures the survival of a § 1983 cause of action, Brazier v. Cherry, 293 F.2d 401 (5th Cir.), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); a federal court may resort to the state law of torts to supply the elements of the § 1983 claim, Jenkins v. Averett, 424 F.2d 1228, 1231 (4th Cir. 1970); and defenses recognized by state common law may be raised to contest a § 1983 claim, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Moreover, state law is available to a § 1983 claimant under the doctrine of pendant jurisdiction without the necessity of showing diversity of citizenship. Jenkins v. Averett, 424 F.2d 1228, 1231 (4th Cir. 1970); Whirl v. Kern, 407 F.2d 781, 793 (5th Cir. 1969).

The Supreme Court of South Carolina has expressly ruled that a sheriff's responsibility for the acts of his deputy is not dependent on the doctrine of respondeat superior. Instead, liability is based on the deputy's position as the sheriff's representative for whose official acts the law holds the sheriff strictly accountable. Rutledge v. Small, 192 S.C. 254, 6 S.E.2d 260, 262 (1939). The sheriff's liability is clearly defined in Teasdale v. Hart, 2 Bay 173, 175 (S.C.1798):

> "Every sheriff [is] liable for the acts of all his officers, and all persons acting under him in every subordinate capacity; and they on their parts, are bound to conduct themselves in the like manner as the sheriff himself ought to do, if he was present; and he is not to be let off, on account of the blunders, misconduct, or errors of any of his inferior agents."

This rule, promulgated in accordance with the common law almost two centu-

---

9. *Compare* Hill v. Toll, 320 F.Supp. 185 (E.D.Pa.1970) (doctrine of respondeat superior applied to § 1983 claim) *with* Sanberg v. Daley, 306 F.Supp. 277 (N.D. Ill.1969) (doctrine held inapplicable). *Cf.* Flemming v. South Carolina Electric & Gas Co., 224 F.2d 752, 753 (4th Cir. 1955) (bus driver's corporate employer held liable without discussion of the doctrine).

10. 42 U.S.C. § 1988 (1970) provides:
"The jurisdiction in civil . . . matters conferred on the district courts by the provisions of this chapter . . . shall be exercised and en-

forced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies . . . , the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction . . . is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ."

ries ago, has not been impaired by the passage of time. On the contrary, it has been reaffirmed, Rutledge v. Small, 192 S.C. 254, 6 S.E.2d 260, 262 (1939), and codified with respect to deputies and special deputies, S.C.Code Ann. §§ 53–71, –83 (1962). It is broad enough to include Hunter and Ray McMahan, who, as temporary law enforcement officers, acted under the sheriff in a subordinate capacity.

Assault by a sheriff's deputy in the performance of his duties is among the specific acts for which a sheriff is liable. Rutledge v. Small, 192 S.C. 254, 6 S.E.2d 260, 261 (1939) (dictum). Because this is the wrong that Hunter and Ray McMahan committed, the district court properly held the sheriff liable.

### IV

Supervisor George McMahan stands on a different footing. The proof does not show that he was responsible for the conduct of Hunter and Ray McMahan at the time they assaulted Scott. As county supervisor, he was normally the person for whom they worked. However, Sheriff Vandiver had assumed supervision of the men, and they were no longer performing tasks within the ordinary scope of their jobs as heavy equipment operator and truck driver for the county while they were on the manhunt.

The trial court's finding that the supervisor and sheriff had agreed that county employees could assist the sheriff does not impose liability on the supervisor. The agreement did not provide that the supervisor would exercise control over the employees or retain responsibility for their acts while they were in the service of the sheriff. The sheriff alone was in charge of the men at the time of the assault, and under no theory can Supervisor McMahan be held liable.

### V

Finally, the defendants contend that excessive damages were awarded. Ascertainment of damages arising from personal injuries involves questions that are essentially factual, and an award by a district judge will not be upset unless it is clearly erroneous. Fed.R.Civ.P. 52(a); Neal v. Saga Shipping Co., 407 F.2d 481, 487 (5th Cir. 1969); Lukmanis v. United States, 208 F.2d 260, 261 (2d Cir. 1953). We have reviewed the evidence concerning damages and conclude that the trial judge's award of $22,993.44 was not excessive. *See* McClure v. Price, 300 F.2d 538, 545 (4th Cir. 1962).

Accordingly, the judgment of the district court against Harold W. Vandiver and Ray McMahan is affirmed, and Scott shall recover his costs. The judgment against George McMahan is reversed, and he shall recover his costs against Scott.

