Fred Allen GIBSON, Petitioner,

v.

**CHARLOTTESVILLE–ALBEMARLE JOINT SECURITY COMPLEX, et al., Respondents.**

Civ. A. No. 75–0044.

United States District Court,
W. D. Virginia,
Charlottesville Division.

Aug. 27, 1975.

Fred Allen Gibson, pro se.

Charles Haugh, Commonwealth's Atty., Albemarle County, Charlottesville, Va., for respondents.

## OPINION and JUDGMENT

DALTON, District Judge.

Fred Gibson, a prisoner at the Charlottesville-Albemarle Joint Security Complex has filed this *pro se* complaint alleging negligence in the operation of his electric cell-door and inadequate medical treatment subsequent to the injuries he received from such negligence. The respondents in this action are the Charlottesville-Albemarle Joint Security Complex, its Administrator, Albert Shank, its Chief Medical Officer, Peter Gilbert and Officer Wells, who was the officer in charge of the cells on the night of the alleged incident. By order of this court, petitioner's complaint has been treated as a motion for injunctive relief pursuant to 42 U.S.C. § 1983 seeking the possible dismissal of Gilbert and Wells and an investigation into the matter surrounding petitioner's alleged injuries. Respondents have filed a motion for summary judgment pursuant to Rule 56(b) and submitted affidavits and petitioner's medical records in support of this motion.

 The initial holding of this court is that the Charlottesville-Albemarle Joint Security Complex is not a "person" under § 1983, since injunctive relief is sought here. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Therefore the court will consider this complaint as if the Charlottesville-Albemarle Joint Security Complex were not a party.

Plaintiff alleges that on July 3, 1975 around nine o'clock at night his cell door electrically operated by Officer Wells closed on the chest area of his body thereby causing him injuries. He immediately reported the incident to Janice Jones who was passing out medication to the various inmates at the time. Early on July 4, 1975, the Chief Medical Officer, Peter Gilbert, looked at Gibson's injuries and recommended two aspirin for them. Gilbert also notified Dr. Lee Young, the Complex Doctor at the time who prescribed a mild pain pill called empirin #3. Petitioner alleges that on further complaint, Gilbert notified Gibson that he was scheduled to see Dr. G. R. Benton, III of the University of Virginia Hospital for examination of his chest.

Respondents' answers fill in some of the details. Officer Wells states in his sworn affidavit that on the night of the alleged incident he notified the inmates in the dayroom portion of the cell block to go to their individual cells for night lockup. He states that he looked through the vision panel in the door leading to the dayroom portion of the cell block to insure that the inmates were obeying his order and then pulled the cell lockup switch. He further says that he never heard any complaining shouts at that time or when he walked down the jailer's catwalk to insure that each man was in his proper cell. He says that he never learned of the injury until July 7, 1975.

Dr. Gilbert confirms petitioner's allegation that he did see Gibson on July 4, 1975 and prescribed aspirin at that time. He states that he also saw Gibson on July 5, 1975 at which time he noticed no abnormalities, and concluded that Gibson should not be sent for x-rays. When Dr. Gilbert examined Gibson a third time on July 9, 1975 he was still complaining of chest pain. He was then sent by Dr. Gilbert to see Dr. Benton at the University of Virginia Hospital.

Dr. Benton states that Gibson was seen by a doctor in the emergency room of the University of Virginia Hospital on July 5, 1975 at which time x-rays were not recommended. He further states that he saw Gibson on July 10, 1975 upon Gilbert's recommendation the day before. At that time, he was of the impression that Gibson had sustained a contusion and he prescribed a drug for his ailment.

The jail administrator, Albert Shank, relates excerpts in his sworn affidavit that concur with the events outlined in the other affidavits. Shank also questioned Officer Wells about the incident and received the same account of the accident that Wells relates in his affidavit.

■ The sum and substance of petitioner's complaint is that he is alleging negligence on the part of a jail employee and inadequate medical attention by the treating doctors. As to petitioner's claim against Officer Wells, there is no contention that Officer Wells ever knew of the prisoner's injuries. Officer Wells' affidavit indicates that he did not know of the injuries until four days later and petitioner says nothing to the contrary in his complaint. When a jail employee is not apprised of a prisoner's injury it is difficult to see how he could be negligent in failing to give immediate attention to it. *Summers v. Horton*, 443 F.2d 235 (4th Cir. 1971).

■ Furthermore, plaintiff's complaint fails to demonstrate any way whatsoever that Officer Wells acted negligently in locking the cells up. The complaint merely states the fact of the injury. Officer Wells' affidavit indicates no conduct beyond the ordinary. His affidavit indicates he did keep a lookout when pulling the cell door switch and later checked to see that each prisoner was in his cell. Absent further proof such conduct cannot be considered negligent. Furthermore, even if such conduct were negligence, such negligence would only be a tort cognizable under state law that would not amount to the denial of a constitutionally federally protected right which could be redressed under § 1983. *Nettles v. Rundle*, 453 F.2d 889 (3rd. Cir. 1971).

■■ As to the claim of inadequate medical attention, it is well settled that prisoners are entitled to reasonable medical care and that a denial of such care may violate the prisoner's constitutional rights. *Hirons v. Director*, 351 F.2d 613 (4th Cir. 1965). However absent factual allegations of obvious neglect, this court will not second-guess the prescribed treatment of licensed medical personnel. *Cates v. Ciccone*, 422 F.2d 926 (8th Cir. 1970).

Respondents' affidavits indicate a medical judgment that Gibson's injuries were not severe enough to warrant immediate x-rays or additional medicine beyond pain relievers. Such a medical judgment may be one with which petitioner disagrees, but it is not one that comes close to violating constitutional standards.

Since plaintiff's complaint in no way states facts which contradict respondents' factual allegations that might suggest gross negligence, see *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970) or inadequate supervision, see *Landman v. Peyton*, 370 F.2d 135 (4th Cir. 1966), *cert. denied*, 388 U.S. 920, 87 S.Ct. 2142, 18 L.Ed.2d 1367 (1967), this court finds no material facts in dispute to warrant further investigation of a potential constitutional claim. See *Cole v. Williams*, No. 74-2266 (4th Cir. 1975). Accordingly, respondents' motion for summary judgment pursuant to Rule 56(b) is granted and this case is stricken from the docket.

The clerk is directed to send a certified copy of this opinion and judgment to the petitioner and to counsel for respondents.