**Floyd Dempsey MULLINS, Plaintiff,**

v.

**The CITY OF RIVER ROUGE, a municipal corporation, et al., Defendants.**

Civ. A. No. 30485.

United States District Court,
E. D. Michigan, S. D.

Feb. 22, 1972.

Robert W. Larin, Pontiac, Mich., Eugene R. Bolanowski, Warren, Mich., for plaintiff.

Carl E. Hall, Detroit, Mich., for defendants Watters, Futo and Molnar.

Kenneth J. Logan, Logan & Huchla, River Rouge, Mich., for defendant Turek.

OPINION

FEIKENS, District Judge.

This cause was tried to this court, jury trial having been waived. Appropriate findings of fact and conclusions of law (Rule 52(a), Federal Rules of Civil Procedure) are contained herein.

Plaintiff, Floyd Mullins, brings this cause under 42 U.S.C. § 1983, and says that the defendants (police officers of the cities of Ecorse and River Rouge) deprived him of a constitutionally guaranteed right to medical treatment while

jailed. He says that this deprivation resulted in the loss by him of all his fingers on both hands and portions of his thumbs.

On a very cold Saturday morning, December 3, 1966, at approximately 3:30 a. m., Floyd Mullins was found by defendant Ernest Molnar, an Ecorse police officer. He had been called to the corner of West Jefferson and Auburn streets by a citizen, one Clarence LePeare. Mullins was lying, seemingly conscious but incoherent, in a lot in which some trucks were parked a short distance from the intersection.

On the afternoon of the day before this occurrence, he had been employed as a stamper at the Chrysler Plant in Trenton, Michigan, working the afternoon shift. At approximately 10:00 p. m. following a shift break, he claimed he was dismissed from his work for failure to wear safety goggles. He left the plant, hitchhiked a ride to Wyandotte, and went into the Blossom Bar and had two beers. He says that he left the bar, boarded a bus, went to Ecorse, and exited the bus at the corner of West Jefferson Avenue and Auburn Street. Here he said he was mugged. He then says, "I don't know who did it . . . I don't remember anything else. I was unconscious. I didn't regain consciousness until the next morning . . . I remember being taken in a police car back to Ecorse. I remember signing a paper and being released about nine or nine-thirty [a. m.] the next day [December 3, 1966]."

When Officer Molnar found Mullins, there was a heavy odor of alcohol about him. Molnar took Mullins to the Ecorse Police Station, where Officer Futo came out to the car to book him. Mullins was unable to answer questions coherently so that the officers were unable to elicit either his address or telephone number. Because the Ecorse jail was under reconstruction, Mullins was then taken to the River Rouge jail, where Officer Turek and the Ecorse officers (defendants Molnar and Watters) assisted Mullins to the jail block.

Because Mullins appeared to be obviously intoxicated, he was positioned in the cell bed in such a way that he could regurgitate if necessary and so that he could sleep.

Unbeknownst to the defendant police officers and evidently to Mullins, he had suffered severe frostbite. Defendant Turek, who was in charge of the River Rouge facility, testified, "I went back to see him every fifteen minutes or so. He was sleeping . . . I saw no pallor in his fingers. I did not see Mullins rubbing his hands together. He did not complain of pain." At about 9:30 a. m. he was arraigned before Judge Barber and charged with being drunk and disorderly and released.

Mullins returned to his home and late in the afternoon of that day, because of severe frostbite to his fingers, he was admitted to the Delray General Hospital. He was taken from that hospital to Grace Hospital. He eventually suffered amputation of all fingers and portions of his thumbs.

Mullins had previous difficulty with excessive alcohol intake, and he had been arrested for drunkenness on at least two prior occasions. To the defendants it appeared that they had a man who was heavily intoxicated, who was dirty and disheveled, who did not appear to be in need of medical care and who did not say until some weeks later that he had been assaulted and robbed. Yet, as it later appeared, his fingers were severely frostbitten and earlier medical attention would have been helpful.

Under these facts, the question is raised: Did defendants deprive plaintiff of his constitutional right to medical care and if so, was that deprivation a proximate cause of plaintiff's injury.

In analyzing the facts of this case, it can be argued that the police officers' actions constituted at most simple negligence. At no time did plaintiff request medical aid or alert defendants to his condition. Expert testimony indicated that the only visible sign of frostbite would be that his fingers would have a

dead white pallor, with possible blueness at the tips. Even this fact was obscured since credible testimony indicated plaintiff's face and hands were covered with dirt.

The case for simple negligence is further diluted in that the medical testimony also indicated that if plaintiff had been exposed for the length of time he claims (eight hours), with weather conditions so severe (6 to 12 degrees Fahrenheit and wind velocity between 7 and 10 miles per hour), he would have, whether he received medical attention or not, suffered some finger loss.

Assuming simple negligence, the question that is presented is whether this is sufficient to impose liability under Section 1983. In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960), the Supreme Court held that a complaint against a Chicago police officer alleging that plaintiff was awakened in the middle of the night, forced to stand naked while the police ransacked his house, taken to the police station and then released, stated a cause of action under Section 1983. In doing so the court stated that an intent to "deprive a person of a federal right" was not necessary to create a cause of action. The court further stated that the section "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." 365 U.S. 187, 81 S.Ct. 484 (1960).

The precise meaning of this remark in Monroe v. Pape is unclear. In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966), the court indicated that certain common law defenses were available to police officers in a civil rights action, such as probable cause. Beyond these two cases the Supreme

Court has not outlined the dimensions of liability under Section 1983.

After Monroe v. Pape, the Seventh Circuit in Hardwick v. Hurley, 289 F.2d 529 (7th Cir. 1961),[1] expressed some fear that the Supreme Court intended to impose strict liability upon police officers.

The law that has evolved since Monroe v. Pape indicates that that is not the course decisions have taken. Decisions, however, have not been uniform in the enunciations of standards by which police conduct is to be judged. Some courts have followed the test enunciated in Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952), whether, judging by contemporary community standards, the conduct "shocks the conscience." Church v. Hegstrom, 416 F.2d 449 (2nd Cir. 1969). See also Striker v. Pancher, 317 F.2d 780 (6th Cir. 1963) (false arrest is not actionable under Section 1983 unless accompanied by reprehensible conduct).[2]

In the typical false arrest or false imprisonment case, the courts have allowed good faith and honest mistake as a defense, at least in the absence of other aggravating circumstances. Bowens v. Knazze, 237 F.Supp. 826 (N.D.Ill.1965); Madison v. Manter, 441 F.2d 537 (1st Cir. 1971) (search warrant). Further, a "trivial battery" does not give rise to a civil rights claim where the police officers did no more than push the plaintiff down the hall. Daly v. Pedersen, 278 F.Supp. 88 (D.C.Minn.1967).

Some courts have gone further in allowing recovery based upon simple negligence. Carter v. Carlson, 447 F.2d 358 (D.C.Cir.1971).[3] The difficulty in reconciling the cases is this: Many cases speak in negligence terms when what is actually at issue is an assault and bat-

---

1. Overruled in Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968), holding police officers liable for false arrest regardless of good faith.

2. Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965).

3. In this case, plaintiffs suffered an assault and battery by a policeman who could not be found. Liability was sought against superior officers for negligence in supervision and training. The negligence alleged was therefore more than a single failure to act, but a recurring course of action, more culpable than a single omission.

tery, or false arrest situation. E. g., Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969), speaks in negligence terms, although action is for false imprisonment, an intentional tort. This arises from the language in Monroe v. Pape, dismissing intent to deprive one of a constitutional right as a requisite element for liability. The court was referring to this intent, not the intent required for finding liability in a battery. Thus, in Monroe v. Pape, it is clear from the facts that the officers had sufficient intent to make a false arrest and commit an assault; what the court disposed of was a further specific intent to deprive one of his constitutional rights. So *Monroe* lends no support to the proposition that negligence, or omission, is sufficient to create liability. Williams v. Field, 416 F.2d 483 (9th Cir. 1969).

■■ It is perhaps difficult to create an all encompassing rule of constitutional fault. Nonetheless, this court would adopt the principles enunciated in Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970), in an opinion by Judge Sobeloff. The court there stated that gross or culpable conduct was the proper standard to apply in judging police officers' conduct.

> "The wound [plaintiff] suffered was the result of unreasonable—or, to use the apt terminology of the District Court, 'gross or culpable'—conduct of the defendant police officers. This arbitrary action was a constitutional violation." 424 F.2d at 1232.

It is with this guideline that defendant officers' conduct must be judged. Mere negligence is insufficient. Hopkins v. County of Cook, 305 F.Supp. 1011 (N. D.Ill.1969); Meadows v. Johnson, Civil Action No. 37396, November 19, 1971, (E.D.Mich.1971).

It is apparent from the facts of this case that there is no gross negligence. A failure to correctly diagnose and treat plaintiff, when no request for aid was made, and plaintiff's injuries were not obvious, cannot and does not constitute gross negligence.

For the above reasons, and those reasons given by this court orally in open court at the close of the case, a judgment of No Cause of Action is entered in favor of defendants.

An appropriate order may be presented.