Glen F. REED

v.

PHILADELPHIA HOUSING AUTHOR-
ITY, Harvey Matthews, Individually and
as Security Guard employed by the
Philadelphia Housing Authority.

Civ. A. No. 71–2385.

United States District Court,
E. D. Pennsylvania.

March 8, 1974.

Jack Levine, Philadelphia, Pa., for plaintiff.

Jonathan Wheeler, Philadelphia, Pa., for Philadelphia Housing Authority.

Alfred Sarowitz, Philadelphia, Pa., for Harvey Matthews.

## MEMORANDUM AND ORDER

FOGEL, District Judge.

This is an action brought by Glen F. Reed[1] against the Philadelphia Housing Authority (hereinafter referred to as PHA) and Harvey Matthews, individually and as a security guard employed by PHA. The claim against Matthews is asserted under the federal civil rights statutes, 42 U.S.C. §§ 1983 and 1988, and, apparently, under the common law of Pennsylvania, while the claim against PHA is advanced on the basis of the pendent jurisdiction of this court to hear state claims closely related to a federal cause of action. Presently before the Court is PHA's motion for judgment on the pleadings, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

1. At the time of the original filing of the complaint in this case, plaintiff Reed was a minor, and sued by his guardian *pendente lite*, Frederick J. Edwards. He is now twenty-one years old.

The litigation has its genesis in an incident which occurred on November 9, 1970, at the Richard Allen Homes, a facility owned and managed by PHA. Although the circumstances leading to the event are in dispute, it is conceded that defendant Matthews, in the course of his official duties as a security guard for PHA shot and wounded plaintiff Reed, who was eighteen years old at the time.

Procedurally, the history of the case is complex.

Plaintiff's initial complaint was filed on October 1, 1971. Named as defendants in that pleading were PHA and John Doe and Richard Roe, unknown security officers employed by PHA. A first amended complaint was filed on April 12, 1972, which dropped Doe and Roe and added Harvey Matthews and Arthur H. Dix, who had been identified as the security officers involved. The grounds for relief in both the original and the amended complaints were not clearly delineated, but a construction most favorable to plaintiff indicates an assertion of claims against both PHA and the individual defendants under 42 U.S.C. § 1983, against the individual defendants under 42 U.S.C. §§ 1985(3), 1986, and 1988; and against all defendants under the common law of Pennsylvania.

In October, 1973, PHA and the individual defendants filed motions for judgment on the pleadings, or, in the alternative, for summary judgment, based on depositions of Reed, Matthews, Dix and Albert Paris, a Philadelphia police detective who investigated the incident. Oral argument was held on November 14, 1973. As a result of that argument, and ensuing discussions with counsel, we entered an Order with the consent of all parties on November 15, 1973, providing for the following in substance:

1. Plaintiff was directed to file a second amended complaint in which all claims against PHA based upon 42 U.S.C. § 1983 were to be deleted; any remaining claims against PHA were to be limited solely to those causes arising under the substantive law of Pennsylvania.

2. All claims against the individual defendants under 42 U.S.C. §§ 1985 and 1986 were also to be deleted, and federal claims against these defendants were to be limited to those matters which come within the purview of 42 U.S.C. § 1983.

3. Timeframes were established for filing the second amended complaint, and for motions or pleadings in response thereto.

Accordingly, plaintiff's second amended complaint was filed on November 20, 1973. While this document, like its predecessors, is hardly a model of clarity, we have determined that it substantially complies with the consent order of November 15, 1973. Thus, the pleadings now assert the following bases for relief:

FIRST: A claim against Matthews based upon 42 U.S.C. §§ 1983 and 1988, and upon the common law of Pennsylvania. (The claim against Arthur Dix has been dropped.)

SECOND: A claim against PHA grounded upon the common law of Pennsylvania, asserting direct liability and liability under the doctrine of *respondeat superior.*

PHA has renewed its motion for judgment on the pleadings, or, in the alternative, for summary judgment. Individual defendant Matthews has not renewed his motion; instead he has filed an answer to the second amended complaint.

At this juncture, therefore, the only matter requiring decision is PHA's pending motion for judgment on the pleadings for summary judgment, which is based upon the following legal contentions: [2]

---

2. PHA also raises defenses relating to federal claims against the Housing Authority, citing Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), but we need not consider these defenses, since we have found plaintiff's second amended complaint to be in compliance with the order of November 15, 1973, and all federal claims against PHA are therefore withdrawn.

1. Plaintiff's failure to establish that any defendant deprived him of a federally secured right.

2. Plaintiff's failure to establish that the security guard defendant was acting under color of state law.

3. Plaintiff's failure to demonstrate that this is a proper case for invocation of the doctrine of pendent jurisdiction.

4. Plaintiff's failure to establish that 42 U.S.C. § 1988 confers an independent substantive cause of action.

Resolution of the issues presented is best achieved through discussion *seriatim* of PHA's legal contentions as propounded to us.

I. *Deprivation of federally secured rights.*

In essence, PHA contends that plaintiff is attempting to use the federal civil rights statutes as a vehicle to enlarge federal court jurisdiction to include the traditional state action for assault and battery.[3] Defendants admit, however, that PHA is a housing authority within the meaning of the Housing Authorities Law of May 28, 1937, P.L. 955, § 1 et seq., 35 P.S. § 1541 et seq. PHA is therefore a public body, exercising public powers of the Commonwealth of Pennsylvania as an agency thereof. Housing Authorities Law, *supra*, § 10, 35 P.S. § 1550.

Defendants further concede that defendant Matthews was employed by PHA as a security guard, charged with the function of maintaining order, and vested with the powers of apprehension and arrest, which include the right to use firearms under appropriate circumstances.

██ It is beyond question that a private citizen who is assaulted by a police officer can state a claim for relief under 42 U.S.C. § 1983. Fitzgerald v. Appolonia, 323 F.Supp. 1269 (E.D.Pa. 1971). For the purposes of the federal civil rights statutes, an assault by a security guard employed by a state agency can be treated in the same manner as an assault by a police officer, because security guards and police officers alike wear the "badge[s] of authority" of a state and represent it in an official capacity. Monroe v. Pape, *supra,* 365 U.S. at 172, 81 S.Ct. at 476, 5 L.Ed.2d at 497.

██ The exact locus within the Constitution of a right to be free from intentional and unprovoked assault by a police officer or other state official has been the subject of extensive discussion in opinions of the Courts of Appeals. This right is thought to arise from the due process clause of the Fourteenth Amendment, a right to be secure in one's person which stands separate and apart from any specific right found in the Bill of Rights. Application of undue force by law enforcement officers thus deprives the individual of liberty without due process of law. Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973); Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973). A suggested test for a constitutional deprivation in the area of security of one's person is that of "conduct which shocks the conscience", taken from the Supreme Court decision in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

Some decisions have relied on the cruel and unusual punishment clause of the Eighth Amendment. Howell v. Cataldi, 464 F.2d 272 (3d Cir. 1972). Other decisions have expressed considerable doubt as to whether this clause is applicable at all until after conviction and sentence. Johnson v. Glick, *supra*; Anderson v. Nosser, 456 F.2d 835 (5th Cir. 1972) (en banc), cert. denied 409 U.

---

3. It will be noted that PHA's denial of a deprivation of federally secured rights must refer to an alleged deprivation by the security officer defendant, in light of the fact that there are no remaining federal claims against PHA. The issue is significant in the present posture of the case, however, since if it were in fact determined that there was no deprivation of federally secured rights, plaintiff's claim against the individual defendant would be dismissed, because there is no allegation of diversity or of any other ground for federal jurisdiction. As a matter of course, any purported pendent claims could be dismissed as well.

S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972), modifying 438 F.2d 183 (5th Cir. 1971).

■ For the purposes of the present action, we adhere to the reasoning of Judge Friendly in Johnson v. Glick, *supra,* and to the latest expression of the Third Circuit, Curtis v. Everette, *supra,* and hold that once plaintiff proves intentional and unprovoked shooting by a state officer, he has established a valid claim under the due process clause of the Fourteenth Amendment and § 1983 of 42 U.S.C. Such conduct could well, in the words of Justice Frankfurter, "do more than offend some fastidious squeamishness or private sentimentalism." Rochin v. California, *supra,* 342 U.S. at 172, 72 S.Ct. at 209, 96 L.Ed. at 190.[4]

The complaint in this case is consistent with this theory of recovery and with Curtis v. Everette, *supra,* in that it alleges a deprivation of plaintiff's "due process right to be free from bodily harm and injury." *Second amended complaint,* ¶ 17.

■ Thus, an intentional assault by a security guard employed by an agency of the state would establish a valid claim for relief under § 1983. Testimony in the deposition of Reed could justify a jury finding that the assault was intentional.[5]

Even if defendant Matthews' account of the incident were believed,[6] a jury might conclude that the shooting constituted "gross or culpable negligence", a "raw abuse of power" by an officer of a state agency, thus supporting plaintiff's contention that a valid cause of action exists under § 1983. Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970); Mullins v. City of River Rouge, 338 F.Supp. 26 (E.D.Mich.1972).

The *Jenkins* case, *supra,* involved a factual situation similar to the one before us. Plaintiff Jenkins was an eighteen year old boy who was shot by an officer of the police department of Asheville, North Carolina. The record contained conflicting testimony with respect to the deliberate or accidental nature of the shooting.

---

4. For a discussion of due process deprivations based on gross negligence or incompetence of state officials, see text *infra.*

5. Q. How close was the guard who shot you to you at the time he shot you?
A. Well, he wasn't no more than this (indicating). I mean—let me see. Maybe less than—maybe a foot or something. Because like he just stuck in right in my navel. He was that close.
Q. He didn't say anything to you?
A. Didn't say not a word.
Q. Just pulled the gun and shot you?
A. No, hold up. He didn't say anything to me. He mumbled something before he got to me. Said he wasn't going for none of that shit tonight. He mumbled like, he wasn't going for none of that shit tonight. And I didn't see him when he mumbled that, but like it was coming from that direction. Because he approached me like frontwards, and stuck his gun right in my navel, and that was that.
*Reed Deposition,* p. 16

6. Matthews' account of the shooting is as follows:
Q. Now, at what point in this process did you actually draw your weapon?
A. When I pushed Glen Reed away, and the others continued to come in on me.

Q. How close was the closest person to you when you pulled your weapon?
A. They were just about ready to jump on top of me.
Q. I didn't ask you that. How many feet away was the closest person?
A. Two, three feet, maybe. Something like that.
Q. Okay. Now, how soon after you pulled your weapon did the gun discharge?
A. As I pulled my weapon out—when I pulled my weapon out, I don't know whether something or somebody hit me, but the gun discharged. It went off.
Q. That's almost instantaneously?
A. Almost instantaneously. Right.
Q. When you pulled your weapon, was it for the purpose of pointing it at anybody in particular?
A. No, sir.
Q. Was it pointed in the air at any time?
A. No sir. I didn't get a chance hardly to get it out, because as I came out of my holster with my gun, it went off. I didn't get a chance to really just get it out to hold it in the air or do anything. It went off. I pulled it off—I don't know whether the pole hit me or something, because they had gathered in on us. The gun went off.

" * * * The officer yelled 'halt' and Jenkins halted, apparently in the light. According to all the witnesses, including Averett, Jenkins then dropped the tire tool and turned to face his pursuer. The tool made a distinct noise upon falling that was heard all around, and even Averett recalls that it dropped. Only a few feet away, and two or three seconds later, Averett relates, he lowered his gun, and in doing so accidentally pulled the trigger, putting a hole through Jenkins' thigh.

The appellant maintains that the shooting was deliberate. Indeed he testified that after he was shot, appellee took aim again, but by that time Bumpus, who had now also left the police car, appeared, and Averett then lowered the gun.

The two officers placed the wounded man in the back of the police car. Jenkins claims that Averett said, 'You better be glad my gun wasn't pointed at your God damned belly or you would have been dead.' The policeman admits having said that his captive was indeed lucky that the shot did not hit him in the stomach. At trial, Bumpus corroborated this milder version although in his pretrial deposition he had disclaimed any memory of such a statement."

*Jenkins, supra,* 424 F.2d at 1230.

While the trial court determined that the shooting was not intentional, it did find that defendant Averett had been grossly or culpably negligent. On appeal, the issue was whether such a finding would support a cause of action under § 1983. Judge Sobeloff, writing for the majority, determined that a valid § 1983 claim had been established. He stated the following in pertinent part:

"As the District Court recognized, our plaintiff was subjected to the reckless use of excessive force. The wound he suffered was a result of unreasonable—or, to use the apt terminology of the District Court, 'gross or culpable'—conduct of the defendant police officer. This arbitrary action was a constitutional violation.

The dissent maintains that arbitrariness is not the same as negligence. We agree. But we deal here not with simple negligence or inadvertence. The injury in this case could be called 'accidental' only in the sense that it was not specifically intended; it was, however, the direct consequence of defendant's wanton conduct in the course of his attempt to apprehend the plaintiff.

As we have seen, state common law posits arbitrary and gross abuse of police power as a *sine qua non* to recovery. Our affirmance of state liability is on the premise that the 'gross or culpable' finding is the equivalent of a finding of arbitrariness. We propose at this juncture only to utilize the same finding in applying federal law.

Thus, we emphatically reject the spectre raised in the dissent that our opinion contemplates a constitutional remedy for an state-perpetrated negligence. Our concern here is with the raw abuse of power by a police officer —as found by the District Judge— and not with simple negligence on the part of a policeman or any other official. We have no occasion to speculate about cases that are not before us."
*Jenkins, supra,* at 1232.

The critical factor which must be noted, in accordance with the Court's opinion in *Jenkins, supra,* is that *we are not dealing with simple negligence or inadvertence.* The Court of Appeals for the Third Circuit has held that under some circumstances, such as failure to provide adequate or appropriate medical care for an inmate in a prison institution, "an allegation of *negligent* conduct by a state public official is not sufficient, in and of itself, to bring a claim within section 1983." Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970). But the same opinion goes on to state:

"It is only where an inmate's complaint of improper or inadequate med-

ical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment that a colorable constitutional claim is presented. Other courts have made similar holdings. And although these decisions have not been characterized by a uniformity of expression in enunciating standards for measuring the adequacy of a claim under Section 1983, they have consistently held that much more is required than an allegation of tortious conduct. Many cases describe the necessary additive as 'exceptional circumstances.' In Eaton v. Ciccone, 283 F.Supp. 75 (W.D.Mo.1966), the court equated these exceptional circumstances specifically with cruel and unusual punishment proscribed by the Eighth Amendment. Such conduct was characterized in Jordan v. Fitzharris, 257 F.Supp. 674, 679 (N.D.Cal. 1966) as so grossly incompetent, inadequate or excessive 'as to shock the general conscience or to be intolerable to fundamental fairness.'" *Gittlemacker, supra,* at 6 (footnote omitted).

The standard quoted with approval in the Gittlemacker decision, i. e., conduct "so grossly incompetent, inadequate or excessive as to shock the general conscience or to be intolerable to fundamental fairness," is close to the standard expressed in *Jenkins, supra,* as "gross or culpable conduct", "arbitrary action", "wanton conduct", "raw abuse of power." This standard is very far from mere inadvertence or simple negligence.

█ The courts in these cases have been struggling with the problem of the type and degree of conduct which is properly actionable under § 1983. Few courts have been willing to find a valid federal claim where mere negligence is alleged on the part of a state officer. There is a justifiable fear that if negligence were the standard, every automo-

bile accident involving a vehicle driven by a state official would give rise to a cause of action under § 1983. On the other hand, federal courts are unwilling to ignore serious deprivations of federally secured rights, where a defendant seeks to avoid liability by asserting that his conduct was not "intentional".

The first limitation which the courts have imposed is that the federal right allegedly infringed be described with some specificity. The Third Circuit has discussed this requirement in § 1983 cases, including Howell v. Cataldi, 464 F.2d 272 (3d Cir. 1972), and Smith v. Spina, 477 F.2d 1140 (3d Cir. 1973).

The second requirement is that the culpability of the actor must be greater than mere negligence. Again, the Third Circuit has extensively discussed this requirement in such cases as *Gittlemacker, supra.*

Positing the two requirements, that defendant must have infringed some specific federally secured right of the plaintiff, either through intentional conduct or through neglect or recklessness which shocks the conscience, a firm foundation in law thus exists for liability under § 1983.

█ Therefore, a valid claim for deprivation of a federally secured right is established when a private citizen alleges, first, that he has been shot by a security guard employed by a state agency, and, second, that the shooting either was done intentionally and without provocation, or through "gross or culpable" negligence, conduct that *eo ipse* amounts to a "raw abuse of power" which constitutes arbitrary action. Based on the testimony contained in the depositions which are part of the record in connection with this motion for summary judgment, a jury could justifiably find either way. Summary judgment for defendant PHA is obviously improper under such circumstances.[7]

---

7. Although individual defendant Matthews did not renew his motion for summary judgment after the Court's order of November 15, 1973, we would be compelled to deny such a motion had it been brought on the ground of lack of deprivation of a federally secured right, for the same reasons discussed in connection with the motion brought by defendant PHA.

## II. *Acts "under color of state law."*

A related contention of PHA is that defendant Matthews, although concededly a security officer on duty at the time of the shooting incident, was not acting "under color of state law" when he shot plaintiff Reed.

PHA contends that in shooting Reed, Matthews was acting beyond the scope of his employment and in excess of the authority vested in him by the PHA.

The short answer to this contention was given by Mr. Justice (later Chief Justice) Stone in United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, 1383 (1941):

> "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

This doctrine was reaffirmed by the Supreme Court in Monroe v. Pape, *supra*, 365 U.S. at 172, 81 S.Ct. at 476, 5 L.Ed.2d at 497:

> " * * * The question with which we now deal is the narrower one of whether Congress, in enacting [§ 1983], meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position. Cf. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330; United States v. Classic * * *. We conclude that it did so intend."

Clearly, Matthews was "clothed with the authority of state law", and such power and authority as he possessed was "by virtue of state law". Even misuse of power, under these circumstances, is action taken under color of state law.

PHA cites the case of Johnson v. Hackett, 284 F.Supp. 933 (E.D.Pa.1968), in support of the contention that "not every action by an individual acting as a police officer or in an analogous capacity constitutes 'acting under color of state law.'"

In Johnson v. Hackett two police officers, while in uniform and on patrol, allegedly offered to fight a group of black individuals, including plaintiff Johnson, and notified the group that they would return later that evening. It was further alleged that the defendants used racial slurs against blacks, and called plaintiff a "Chinese nigger" before causing his arrest by another officer. The District Court found that the alleged acts of these police officers were not under color of state law, and that no valid § 1983 claim was stated by plaintiff.

> "The acts complained of here were not under 'pretense' of law. They were not committed in the performance of any actual or pretended duty of policemen. They were not acts these defendants could not have committed but for the cloak of the state's authority. It is not alleged that the offer to fight was in any way related to the performance of police duties. Quite to the contrary, the purely personal nature of the offer is emphasized by the allegation that, before the challenge was issued, Thompson removed his gun belt, laying aside, as it were, the symbol or 'pretense' of police authority. As for the name calling, I can conceive of no more 'personal pursuit.' No police duty or power of which I am aware can possibly be construed as clothing an officer with the authority of law to call anyone insulting names.

> "What plaintiff's position boils down to is that any act committed by a police officer while on duty and in uniform is under 'color of law', even if the act is wholly unrelated to the performance of any of his duties. This contention attempts to equate 'clothed with the authority of state law' to 'wearing a policeman's uniform.' Of course they are not the same. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law. If the

officer was enabled to do what he did because of the authority of his office, even if what he did constituted an abuse of that authority, either by the excessiveness of his conduct or because the act was not actually, although apparently, authorized, the act is under 'color of law.' "

Johnson v. Hackett, *supra* at 937.

The holding in *Hackett*, because of its distinct factual situation, does not compel a finding as a matter of law that Matthews was not acting under color of state law, based upon the facts before us.[8]

There is nothing either in the pleadings or in the record of the case before us presently which indicates that Matthews was in any way involved in a "personal pursuit" at the time of the incident. He did not purport to lay aside the symbol or pretense of authority before shooting Reed. In PHA's brief in support of its motion for summary judgment, it is stated that Matthews approached the group, including Reed, "to investigate the disturbance", and that "Officer Matthews drew his revolver in an attempt to maintain order when the gun accidentally discharged and Glen Reed was struck with the bullet.[9] It is clear that Matthews was "enabled to do what he did because of the authority of his office, even if what he did constituted an abuse of that authority, either by the excessiveness of his conduct or because the act was not actually, although apparently, authorized", *Hackett, supra*, at 937, and therefore the "personal pursuits" defense has no applicability under the facts of this case.

■ Summary judgment in favor of PHA on the issue of whether Matthews' acts were "under color of state law", is clearly unwarranted upon this record, and will accordingly be denied.[10]

### III. *The applicability of the doctrine of pendent jurisdiction.*

As noted previously, plaintiff Reed has dropped all federal claims against PHA, according to the agreement of the parties incorporated in this Court's Order of November 15, 1973. Plaintiff now asserts state law claims against PHA and invokes the pendent jurisdiction of this Court pursuant to the doctrine of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). PHA contends that this is not an appropriate case for exercise of our discretionary power to hear pendent state claims.

The doctrine of pendent jurisdiction developed by the Court in *Gibbs* requires two distinct determinations: the first goes to our *power* to take jurisdiction over the pendent claim, and the second goes to the exercise of our *discretion* once judicial power has been established. Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

■ The judicial *power* to hear state claims exists whenever there is a federal claim

"* * * and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'. The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding,

---

8. Although we do not necessarily subscribe to the opinion expressed by Professor Antieau about the decision in *Hackett*, his comments do present views that should be considered. C. Antieau, Federal Civil Rights Act, Civil Practice, 54–55 (1971).

9. *Brief in Support of Defendant's Motion for Summary Judgment and/or Judgment on the Pleadings*, p. 1.

10. A motion for summary judgment in favor of the individual defendant Matthews would also be improper on the basis of the record now before us.

then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole."

*Gibbs, supra*, 383 U.S. at 725, 86 S. Ct. at 1138 (footnotes omitted)

■ But the existence of judicial power to hear a state claim is limited by the sound discretion of the District Court.

"That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. * * * Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed.Rule Civ. Proc. 42(b). If so, jurisdiction should ordinarily be refused."

*Gibbs, supra*, at 726–727, 86 S.Ct. at 1139 (footnotes omitted).

The present case, however, presents a problem which was not involved in *Gibbs*, since PHA is implicated in this litigation only with respect to the state law claim and not with respect to any claim as to which there is an independent basis for federal jurisdiction. By hearing the state law claim against PHA in the present action, this Court would be exercising jurisdiction not only over a *pendent claim*, but over a *pendent party* as well.

The propriety of extending the doctrine of *Gibbs* to include pendent parties as well as pendent claims was discussed at some length by the Supreme Court in Moor v. County of Alameda, *supra*. In *Moor*, petitioners had brought suit in federal court to recover actual and punitive damages which they allegedly suffered as a result of a wrongful discharge of a shotgun by a deputy sheriff of Alameda County during a civil disturbance. Named as defendants were the deputy sheriff, three other deputies, the sheriff, and the County of Alameda.

The District Court dismissed the petitioners' claims under 42 U.S.C. §§ 1983 and 1988 against the County of Alameda and concluded that the exercise of pendent jurisdiction over the state law claims against the county would be inappropriate both as a matter of judicial *power* and sound *discretion*. The Court of Appeals for the Ninth Circuit affirmed. Moor v. Madigan, 458 F.2d 1217 (9th Cir. 1972).

Mr. Justice Marshall, writing for eight members of the Court, discussed the "pendent party" issue as follows:

"As to the question of judicial power, the District Court and Court of Appeals considered themselves bound by the Ninth Circuit's previous decision in Hymer v. Chai, 407 F.2d 136 (1969), wherein the court refused to permit the joinder of a pendent plaintiff. Petitioners vigorously attack the

decision in Hymer as at odds with the clear trend of lower federal court authority since this Court's decision in Gibbs. It is true that numerous decisions throughout the courts of appeals since Gibbs have recognized the existence of judicial power to hear pendent claims involving pendent parties where 'the entire action before the court comprises but one constitutional "case"' as defined in Gibbs. Hymer stands virtually alone against this post-Gibbs trend in the courts of appeals, and significantly Hymer was largely based on the Court of Appeals' earlier decision in Kataoka v. May Department Stores Co., 115 F.2d 521 (C. A.9 1940), a decision which predated Gibbs and the expansion of the concept of pendent jurisdiction beyond the narrow limits set by Hurn v. Oursler, supra [289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148]. Moreover, the exercise of federal jurisdiction over claims against parties as to whom there exists no independent basis for federal jurisdiction finds substantial analogues in the joinder of new parties under the well-established doctrine of ancillary jurisdiction in the context of compulsory counterclaims under Fed. Rules Civ.Proc. 13(a) and 13(h), and in the context of third-party claims under Fed.Rule Civ.Proc. 14(a). At the same time, the County counsels that the Court should not be quick to sweep state law claims against an entirely new party within the jurisdiction of the lower federal courts which are courts of limited jurisdiction—a

jurisdiction subject, within the limits of the Constitution, to the will of Congress, not the courts. Whether there exists judicial power to hear the state law claims against the County is, in short, a subtle and complex question with far reaching implications. But we do not consider it appropriate to resolve this difficult issue in the present case, for we have concluded that even assuming arguendo the existence of power to hear the claim, the District Court, in exercise of its legitimate discretion, properly declined to join the claims against the County in these suits.

> *Moor, supra,* 411 U.S. at 713, 93 S. Ct. at 1797. (footnotes omitted).

Since the Supreme Court did not decide in *Moor* the question of the existence of the judicial *power* to hear claims against a pendent party,[11] we must consider the authority in the Third Circuit on this question.[12]

In diversity cases, the Third Circuit has recognized the existence of the judicial power to hear pendent claims involving pendent parties, when the pendent claims would not independently satisfy the requirements of federal jurisdiction, either because of the absence of jurisdictional amount,[13] or because of the absence of diversity of citizenship.[14] These cases have expressly relied on the *Gibbs* decision, or, in the case of Borror v. Sharon Steel Co., *supra*, at note 14, on an admitted extension of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), which established a nar-

---

11. It has been argued that the decision in *Moor* undercuts the doctrine of *Hymer*, even in the Ninth Circuit. See Gaison v. Scott, 59 F.R.D. 347 (D.Hawaii, 1973).

12. As noted in footnotes 29 and 30 to the Court's opinion in *Moor*, the preponderance of the decisions of the Courts of Appeals favor recognition of the existence of judicial power to hear pendent claims involving pendent parties. *Hymer* and Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964) are to the contrary, though both cases apparently rely on the law prior to *Gibbs*.

13. Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971) (pendent plaintiffs); Jacobson v. At-

lantic City Hospital, 392 F.2d 149 (3d Cir. 1968) (pendent defendant); Wilson v. American Chain and Cable Co., 364 F.2d 558 (3d Cir. 1966) (pendent plaintiff).

14. Borror v. Sharon Steel Co., 327 F.2d 165 (3d Cir. 1964) (Survival claim and wrongful death claim joined in same action; survival claim satisfied the requirements of diversity jurisdiction, but diversity did not exist between defendant and the parties in interest in the wrongful death claim; held that diversity jurisdiction could be exercised over the entire action.)

rower doctrine of pendent jurisdiction before Gibbs.

The diversity jurisdiction cases, however, are not in themselves determinative of the present case, which turns upon the power of this Court to hear a *pendent state claim* against a *pendent party* when *federal claims* are asserted against *another party* which cannot be asserted against the *pendent party* because of the prohibition of Monroe v. Pape: the precise question, in fact, which the Supreme Court declined in *Moor*.

The Third Circuit, in a pre-*Moor* decision, apparently recognized in dictum that judicial power under such circumstances exists, subject of course to the discretion of the trial court.

 " * * * There is some authority, however, suggesting that the fact that the municipality could not have been a defendant under § 1983 would not preclude it from being a proper defendant under the pendent state claim, so long as the other factors conferring pendent jurisdiction under the *Gibbs* test are present. See Astor-Honor, Inc. v. Grossett & Dunlop, Inc., 441 F.2d 627 (2d Cir. 1971)." Smith v. Spina, 477 F.2d 1140 (3d Cir. 1973).

My Brothers, Lord and Weiner, of this Court, in opinions handed down since *Moor*, concluded that pendent jurisdiction existed under factual situations similar to those in the present case. Tauss et al. v. Rizzo et al., 361 F. Supp. 1196 (E.D.Pa., 1973) ; Edwards v. Borough of Milbourne et al. Civil Action No. 73–1252 (E.D.Pa., August 2, 1973).[15] Chief Judge Lord, in *Tauss, supra,* discussed the *Moor* decision and concluded that it did not change the law in the Third Circuit as expressed in such cases as Jacobson v. Atlantic City Hospital, and Wilson v. American Chain and Cable Co., *supra.*

Based on our review of the cases previously cited,[16] we are in agreement with that conclusion and hold that the judicial power exists in a federal court to hear *pendent claims* against a *pendent party,* if the requirements of *Gibbs* are otherwise satisfied.

Under the facts and circumstances of the instant case, we find that the requirements of *Gibbs* with respect to judicial power are fully satisfied.

The federal claim under § 1983 certainly is of sufficient substantiality to confer subject matter jurisdiction on this Court.

The relationship between the federal and state claims is such that the entire action before the Court is one constitutional "case", which arises from a common nucleus of operative fact.

Considered without regard to the federal or state character of the claims, the plaintiff in this case would ordinarily be expected to try all of his claims in one case in one forum. *Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. 1130, 16 L.Ed.2d 218.

On the record before us, we therefore conclude that we have the judicial power in this matter to hear pendent state claims against the PHA, in the same proceeding in which we consider the federal claims against the individual defendant.

The existence of our power to hear the pendent claims does not, of course, end the inquiry. Equally crucial to an ultimate determination with respect to the exercise of that power, under the teaching of *Gibbs* and *Moor,* is an evaluation of the factors which justify the sound exercise of discretion to hear the pendent claim.

In the present case, most of the operative facts which must be determined by the factfinder relate to the circumstances surrounding the admitted

---

15. My Brother Higginbotham of this District has declined to exercise pendent jurisdiction in a similar case, but based on discretionary factors rather than non-existence of the judicial power to hear such claims. Fields v.

Romano et al., 370 F.Supp. 1053 (E.D.Pa., 1974).

16. See also Part I of the Third Circuit opinion in Curtis v. Everette, *supra.*

shooting of plaintiff Reed by defendant Matthews. It is clear that the interests of judicial economy, convenience and fairness to litigants would be served by having these facts determined in a single judicial proceeding in a single forum.

The liability of PHA, under plaintiff's alternative theory of direct liability based on negligence, may also depend in part on the development of facts pertaining to the adequacy of training and supervision given to Matthews. While these facts are collateral to the facts relating to the shooting incident, they are not inordinately complex, nor will the proceedings be unduly prolonged by permitting testimony directed thereto.

Similarly, with respect to the legal issues raised by the state claim against PHA, there are no arcane questions of state law to be determined, nor is the jury likely to be confused by application of different legal theories to the two defendants in the case. Indeed, the complexities of applicable state law in 402A cases, to mention but one type of action entertained by this Court under diversity jurisdiction, are generally greater than those presented by the facts and law of this case. With proper jury instructions, trial of this case should be no more complex than that of other cases involving more than one party defendant.[17] *Tauss, supra,* 361 F.Supp. at 1199. Thus the two impediments to discretionary pendent jurisdiction which were stressed by the Supreme Court in *Moor*—jury confusion and unsettled state law—are not present in the case now before us. *Moor, supra,* 411 U.S. at 716, 93 S.Ct. at 1799, 36 L.Ed.2d 596.

We therefore conclude that the standards for the exercise of discretion set forth in *Moor* and *Gibbs,* when applied to the facts of this case on the record before us, dictate the exercise of our discretion to invoke the doctrine of pendent jurisdiction over plaintiff's state claims against PHA.

*IV.* The applicability of 42 U.S.C. § 1988.

In addition to his federal claim against defendant Matthews under § 1983, plaintiff also seeks to state a claim against this defendant under § 1988. Count II of the second amended complaint is denoted "Negligence, 42 U.S.C. Section 1988", apparently under the assumption that § 1988 incorporates the common law cause of action for negligence.

PHA argues that § 1988 is remedial only and does not confer an independent cause of action in a federal court.

It must be emphasized that plaintiff does not assert any claim under § 1988 against PHA. The significance of PHA's opposition to the § 1988 claims against Matthews, at the present stage of the litigation, is weakened by our determination that, for purposes of the exercise of pendent jurisdiction, plaintiff has stated a substantial federal claim against Matthews under § 1983. Thus, whatever the ultimate disposition of the § 1988 claim, PHA will still remain a defendant in the case.

However, for the purpose of simplification of the issues before trial, we will consider the applicability of § 1988 to plaintiff's claims against Matthews.

There is considerable force to PHA's contention that § 1988 was not intended to create a separate federal cause of action which would incorporate substantive state law.

The Supreme Court extensively reviewed the legislative history of § 1988 in *Moor,* and concluded that the provision was remedial only, and did not create an independent federal cause of action.

"* * * Section 1988 does not enjoy the independent stature of an 'act of Congress providing for the protection of civil rights,' 28 USC § 1343(4). Rather, as is plain on the face of the statute, the section is intended to complement the various acts

17. We note particularly the possible use of special verdicts and interrogatories to mini- mize jury confusion. Rule 49, Federal Rules of Civil Procedure.

which do create federal causes of action for the violation of federal civil rights. Thus, § 1988 specifies that '[t]he jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter [Civil Rights] and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised in conformity with the laws of the United States.' But inevitably existing federal law will not cover every issue that may arise in the context of a federal civil rights action. Thus, § 1988 proceeds to authorize federal courts, where federal law is unsuited or insufficient 'to furnish suitable remedies,' to look to principles of the common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States.

"The role of § 1988 in the scheme of federal civil rights legislation is amply illustrated by our decision in Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). In Sullivan, the Court was confronted with a question as to the availability of damages in a suit concerning discrimination in the disposition of property brought pursuant to § 1982 which makes no express provisions for a damage remedy. The Court concluded that '[t]he existence of a statutory right implies the existence of all necessary and appropriate remedies,' id., at 239, 90 S.Ct., at 405, 24 L.Ed.2d 386, and proceeded to construe § 1988, which provides the governing standard in such a case, to mean 'that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes . . . . The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is

impaired.' Id. at 240, 90 S.Ct., at 406, 24 L.Ed.2d 386. Properly viewed then, § 1988 instructs federal courts as to what law to apply in causes of actions arising under federal civil rights acts. But we do not believe that the section, without more, was meant to authorize the wholesale importation into federal law of state causes of action—not even one purportedly designed for the protection of federal civil rights."

*Moor*, supra, at 702, 93 S.Ct. at 1792 (footnotes omitted)

In the present case, then, plaintiff can have no independent cause of action against Matthews under § 1988, although the provisions of that section may have some applicability in the cause of action brought pursuant to § 1983. Since Count II is inartfully drawn and is probably intended to include an independent state claim based upon negligence as well as the purported federal claim under § 1988, we will not dismiss Count II outright. We will, however, prohibit any proof at trial designed to establish a separate substantive cause of action under § 1988 and will not permit the jury to consider any claim against Matthews which is asserted to arise under § 1988. Thus Count II will be permitted to stand subject to these strict limitations.

## V. *Conclusion*

For the reasons discussed in this opinion, the motion of defendant Philadelphia Housing Authority for judgment on the pleadings or in the alternative for summary judgment will be denied. The action will go forward based upon plaintiff's claims against individual defendant Matthews pursuant to 42 U.S.C. § 1983 and the substantive law of the Commonwealth of Pennsylvania, and against defendant PHA pursuant to the law of the Commonwealth of Pennsylvania.[18]

An Order will be entered accordingly.

18. We are not foreclosing the possibility of summary judgment in the future as to any claim or any party should the augmented record then before us lead us to conclude that there is no dispute as to any facts material to that claim or party, and that plaintiff, as a matter of law, cannot sustain a valid action with respect thereto.