ESTHER KEESWOOD, MARY JOE WALLACE, EVA WILLIE, DOUGLAS WILLIE, ADA WILLIE For Herself And For Her Daughter KAREN WILLIE, ALLEN JIM, MARIE SMITH For Herself And For Her Two Sons ANDREW SMITH And EDWARD SMITH

Plaintiffs

vs.

THE NAVAJO TRIBE AND THE NAVAJO DIVISION OF PUBLIC SAFETY, RAYMOND TSO, Individually And As Tribal Prosecutor, CLARENCE HAWTHORNE, JOAN RUSSELL, BARBARA BIGTHUMB, ALICE TSO, KEE THINN, Individually And As Police Officers

Defendants

Decided on August 9, 1978

George Harrison, National Indian Youth Council, Albuquerque, New Mexico, for Plaintiffs

Genevieve Chato and John Chapella, Navajo Tribal Legal Department, Window Rock, Arizona, for Defendants

JOHN, District Judge

This is a case of first impression in which the plaintiffs seek damages for false arrest and imprisonment, excessive force, and malicious prosecution. Named as defendants are various employees of the Navajo Division of Public Safety and the Chief Prosecutor of the Navajo Nation, and the Navajo Tribe.

On August 25, 1976, plaintiffs and several others were gathered at the vicinity of the Navajo Tribal Council Chambers during the debate of the Council on the highly controversial Coal Gasification Resolution. Their purpose was to express, to the governing body

-362-

of the Navajo Tribal Government, opposition to the gasification measure. According to testimony, a day prior several persons had occupied the seats of tribal councilmen and prevented the Council from convening; however, it was not established if the named plaintiffs were among those involved and none were arrested.

Plaintiffs had arrived in Window Rock from Shiprock and other areas during the morning and continued to gather in large numbers around the vicinity of the Tribal Council Chambers. During the afternoon the number of people began to decline until there were only a small number of people left, and the remainder of the demonstrators were peaceful.

Sometime during the afternoon Navajo police assigned to the Tribal Chambers were reinforced and formed a cordon line in front of the Chamber to prevent the demonstrators from entering if an attempt to enter should be made; it was during this time plaintiff, Mary Joe Wallace, taunted the officers with a "cane". The Council was in session during this episode. The time is not specific but according to testimony sometime between 5:00 and 6:00 the sound of shattering glass and the uproar of the crowd was heard in front of the Tribal Council Chambers which resulted in the abrupt adjournment of the Council.

After the adjournment of the Council, police were summoned to the rear of the Council Chambers and they assembled into two squads. One squad was instructed to open the rear doors to the police panel wagons and the other squad instructed to arrest those demon-

strators not obeying the order to disperse.

After the formation of the two squads, an order to disperse was given in Navajo and English languages through a voice amplifier known as a "voice box". When the demonstrators did not obey the command to disperse (the demonstrators were given five minutes to disperse) the police moved in and proceeded to make arrests of anyone remaining in the vicinity of the Council Chambers including those leaving.

The named plaintiffs were arrested at various locations in the vicinity of the Council Chambers without warrants. All of the plaintiffs except Edward Smith were arrested and detained in excess of twenty-four (24) hours. Edward Smith, a juvenile, was taken to Hogan Hozhoni.

After the arrests were made, plaintiffs were booked, finger-printed and "mugged". Criminal charges were later filed by the arresting officers and at a subsequent hearing on these criminal charges a disposition was made by the Window Rock District Court in favor of the plaintiffs. As a result, plaintiffs are suing for damages for false arrest, false imprisonment, and use of unnecessary force by police in affecting the arrests. Defendants answered denying various allegations made by plaintiffs but admitted to the fact that criminal charges were brought against plaintiffs but were not successful as they were adjudicated in favor of plaintiffs. Defendants affirmatively plead that the Indian Civil Rights Act and 1 N.T.C. §§ 1,4,6, and 8 provide

for a cause of action only against the Tribe and not employees of the Tribe in individual capacities; the Navajo Tribal Prosecutor is immune from liability in that he acted within the scope of his duties; the officers reasonably believed that a crime had been committed and were privileged to arrest plaintiffs. Additionally, defendants filed a counterclaim but this was later waived by defendants and need not be considered in this opinion.

During the preliminary hearing, defendant, Navajo Tribe, moved to be dismissed raising the defense of sovereign immunity and argued it cannot be sued without its permission and, in the instant case, did not grant permission to be sued. This Court granted defendant's motion. However, the Court in reviewing its dismissal order and after hearing the facts in this case, has to correct its error in granting defendant's motion to dismiss for the following reason. The doctrine of sovereign immunity has been modified from its absoluteness by the Navajo Nation Court of Appeals. Whether this was a wise move is not the question here, but the issue of absolute immunity is a recurring issue when the Navajo Nation becomes a defendant. The move of other sovereigns from absolute immunity to a qualified immunity or complete abrogation of immunity is well noted by this Court. Many sovereigns took the legislative process to initiate changes in the doctrine of sovereign immunity and others were judicially imposed.

In our great nation, the doctrine of sovereign immunity has been vastly modified by the Court of Appeals in Halderman Dennison et al. vs. Tucson Gas & Electric Co. et al. at 63-64. The Navajo

Tribe was considered the "only real defendant..." In this case, the Court of Appeals remanded the case with instructions/1 by then Chief Justice of the Navajo Nation, Virgil Kirk, Sr. In the TG & E case, the Court of Appeals on the one hand recognized and upheld the Tribe's sovereign immunity but it also chose to ignore it by holding the Tribe liable by going beyond the legal fiction and holding the real party liable.

The next issue confronting this court is the unlawful assembly statute of the Navajo Nation---a specific intent statute. The Tribal Council on February 17, 1976 passed and adopted but did not publish Resolution CF-4-76 intended to revise and update the criminal code of the Tribe. Thus certain portions of the criminal code (Title 17 Navajo Tribal Code) were amended; however these amendments were never published and are not now inserted in a pocket supplement of the three volume code. It is undisputed that these newly created crimes are not readily available to the general public. Moreover, the District Courts experienced many obstacles in obtaining a copy of Resolution CF-4-76.

It is equally undisputed that the standards judicially imposed mandate "legislative acts creating crimes must be clear and certain. They must provide reasonable and adequate guidance to a person who would be law abiding so that he can comprehend what activity is to be avoided"./2

Our unlawful assembly statute is constructed as follows:

17 Navajo Tribal Code § 355.  Unlawful Assembly.

>"Any person who assembles with others for the
>purpose of instructing or training in guerilla
>warefare (sic) or sabotage, to engage in rioting
>or the violent disruption of, or the violent
>interference with any educational, religious,
>social, political, recreational, scientific, or
>an offense punishable by a fine of not more than
>Five Hundred Dollars, by imprisonment for not
>more than six months, or both."/3

This Court has exhausted efforts to ellicit legislative history and intent in order to give the phrase "Any person who assembles with others..." adequate interpretation.  The conclusion is that the Council did not adequately define what they meant or intended to mean by the phrase "...with others..." By our statute it would take two person engaging in the prohibited acts to constitute an unlawful assembly. The standard at common law and other state statutes require "... three or more persons..."/4 assembled for an unlawful purpose or for a lawful purpose which would by the unlawful conduct of persons assembled become a unlawful assembly.  It would seem then that the phrase "...with others..." in 17 Navajo Tribal Code, § 355 would be required to meet at the very least the common law standard and this Court so rules.

The demand for certainty and clarity is necessary for many reasons and here are but a few:  "...persons subject to the law cannot in fairness by exposed to governmental controls which trap them." People v. O'Gorman (1937) 274 N.Y. 284, 8 N.E.2d 862, 110 ALR 1231; "...juries and judges cannot reasonably come to conclusion of guilty or innocence when it is uncertain what the lawmakers intended to proscribe."/5

The certainty and clarity in the construction of a criminal statute is a must if it is to meet the fundamental test of due process or the law must be struck down. The responsibility rests squarely on legislative shoulders and an added responsibility in this instant case is the proper publication of the newly created crime. What good is a newly created crime if the knowledge of its existence is known only to the Legislative and Executive Branches of government? Since the conduct of the Navajo public in general is to be controlled by this statute, it is only fair that they receive fair notice. Our traditional and cultural customs mandate such notice because it holds that no one should be held responsible for a prohibited conduct unless that person is first informed that such a conduct or activity will be prohibited. Based upon this traditional concept, this Court concludes that not only must the construction of the criminal statute be certain and clear in its meaning but it must be published. It is common knowledge that the present tribal code has not been current since 1972 and this could very well serve as an impetus for correcting the oversight and negligence of those responsible to keep the publication of ouw laws current. Under the present circumstances in this case, this Court would be remiss in its obligations to the Treaty of 1868, U.S. Constitution, Navajo Bill of Rights and 25 USC §§ 1302 et seq. if it were to enforce the sanctions of 17 N.T.C. § 355 and would be especially remiss in the protection of the Navajo peoples' right to freedom of communication. It should also be remembered that constitutional law mandates that the right of assembly must be given the most liberal and comprehensive construction to protect the peoples' First Amendment Rights. To enforce the sanction of this law upon the facts of this case would put a chilling effect on

our peoples' First Amendment Rights.

## False Arrest and Imprisonment

The issue of false arrest in an action for damages turns on the question of whether the arresting officer was justified in making the arrest. If so, the conduct of the arresting officer is privileged and the action fails./6  If the plaintiff is suing at common law for false imprisonment he must show that he suffered an imprisonment and that it was unlawful./7

The issue from which this action rises was an exercise by plaintiffs of their rights to free speech and assembly.  Since our law is silent on which party the burden lies in this particular kind of action, this Court follows the majority of other courts by establishing the burden upon the defendants to justify their arrests of plaintiffs.  It is clear that the defendants were arrested, imprisoned, tried and were acquitted.  Therefore, adopting the Dellums standard, the unlawfulness and imprisonment is presumed and the burden is on the arresting officers to show the arrests were privileged.

The Court cannot stress the sacredness of Free Speech and Assembly nor the rights protected under the Navajo Bill or Rights, the 1968 Indian Civil Rights Act (25 USC §§ 1302 et seq.,) and the United States Constitution and how essential it is to a free government. Understandably there are narrow limits placed on these rights to say that these rights are not necessarily absolute.  The sovereign may restrict

these rights in the legitimate interest of protecting and insuring the public peace, property rights and functions of government when these interests of government are threatened.

The testimony of defendants in this case reflected an inconsistency in placing a time of the occurence of violence (the sound of breaking glass and the uproar of the crowd) which culminated in the arrest of the named plaintiffs. Captain Hawthorne (then Lt. Colonel) testified that he was inside the Council Chambers at about 5:30 P.M. when he heard the breaking glass and the uproar of the crowd. The only broken glass the testimony revealed was that belonging to Harry Tome's vehicle. Harry Tome, Navajo Tribal Councilman from Red Valley, testified that he left the Council Chambers between 5:30-6:30 P.M. with Councilman Robert Billie of Aneth. He gave Mr. Billie a ride to where his vehicle was parked. However, before they reached their destination, Mary Joe Wallace appeared along the passenger side of the vehicle and began striking it with her cane. At almost that instant, another person appeared with a large stone in her hand and threw it at his vehicle striking the windshield and shattering the glass. That person was identified by Mr. Tome as Ada Willie.

This incident apparently gave opportunity to two other persons to throw an object at a passing vehicle or at a police officer. Captain Franklin Morris (then Lieutenant) testified that he witnessed a woman wearing a blue dress, blue blouse and white scarf throwing an object at and striking a passing pick-up truck. That woman was later identified as Marie Smith. Officer Alice Tso testified that she saw

Marie Smith and Karen Sue Willie throw rocks and that Karen Sue Willie hit her on the hand with an empty aluminum soda pop can. Out of an estimated crowd of fifty or more people, only the above-named plaintiffs were implicated in unlawful conduct. Clearly, then, the testimony utterly failed to show how the conduct of the four justified the declaration of the otherwise peaceful assembly into an unlawful one. To meet the standards imposed by the courts in unlawful assembly, the unlawful conduct or acts of a few cannot change the otherwise peaceful assembly unless the majority concur in the unlawful conduct or acts./8

Therefore, this Court concludes on the basis of their conduct previously stated the arrests and imprisonment of Mary Joe Wallace, Ada Willie, Marie Smith and Karen Sue Willie were lawful and plaintiffs will take nothing under this issue.

There is no question that the acts of the demonstrators, in the Dellums case and the series of demonstrations in the Washington Mobilization Committee case, were concurred in by the majority of the demonstrators making the assembly unlawful but the ruling of the court in these cases was very narrow. In the Washington Mobilization Case, the court in upholding the District of Columbia's failure-to-move-on statute, said "...in applying the statute the police must direct and control members only to the extent sufficient to protect legitimate state interest, which in this case are the free circulation of traffic and the free access of people to public buildings. In ordering the obstructive demonstrators to 'move on' the initial police objective must be merely to clear passage, not to disperse the demonstrators, or to suppress the

free communication of their views."/9

This Court will not attempt to bridge the vast abyss of facts between this case and the Washington Mobilization case---to do so would require great imagination. But the principles of exercising great care to protect the peoples' First Amendment Rights are not any different from the principles adopted by this Court.

The Washington case also noted that most of those arrested were not violent or obstructive. The plaintiffs were also nonviolent and unobstructive in this case. Even if they were not violent the demonstrators could still be properly arrested for failure to obey a valid dispersal order. The demonstrators in this case were given approximately five minutes to leave but testimony reveals that not everyone heard the order. One of the key elements in determining if fair notice was given is the manner by which an order to disperse is communicated. The idea is to be certain the demonstrators are informed. In this case fair notice means an order to disperse given in both Navajo and English languages over a powerful sound equipment given at least four times, and allowing demonstrators approximately ten minutes to leave. Those who refuse to leave at the expiration of ten minutes may be properly arrested.

After the order to disperse was given, the demonstrators were given approximately five minutes to leave and the named plaintiffs were arrested in process of leaving. In fact, some were dragged out of their vehicles and knocked to the ground. This is not by any stretch

-372-

of the imagination fair notice.

Since the arrests were made by the members of the police under color of a statute passed by the Tribal Council, and since the Executive failed and neglected to keep our criminal code current, the Navajo Tribe due to the negligence or omission of the Executive Branch and since the arrests here in question were improperly motivated, and not undertaken in furtherence of good faith law enforcement, the named defendants, in their capacities as Navajo Police Officers, Navajo Division of Public Safety and the Navajo Tribe must be held liable for the false arrest and imprisonment of Esther Keeswood, Allen Jim, Douglas Willie, Eva Willie and Andrew Smith.

## Use of Excessive Force

The issue of whether the police used reasonable force in effecting the arrest of the plaintiffs is to be decided upon the facts of each arrest and the existing law on arrest without warrant. Our arrest law is constructed in part as follows:

17 Navajo Tribal Code § 904. Arrest.

"No member of the Indian police shall arrest any person for

any offense...except when such offenses shall occur in the presence of the arresting officer, or he shall have reasonable evidence that the person arrested has committed an offense, or the officer shall have a warrant..."

Although our law is silent on the issue of force, it is implicit that the amount can be no more than reasonably appears necessary and should not subject the person arrested to unnecessary

-373-

rish of harm./10

There is undisputed testimony that the named plaintiffs did not resist arrest, but the Court's review of the police video tape showed officers striking arrested persons about the body with batons. Police action of this nature is reprehensible to the principles of good law enforcement and shocking to the conscience of this Court.

Plaintiff Eva Willie testified that she returned to her car when the order to disperse was given and was waiting for others when police officers opened the door and dragged her out. She was then roughly placed in the back o the police panel. This roughness resulted in a very immane bruise on her right leg. Plaintiff Ada Willie testified that she was arrested after she returned to her car. The police opened her car door and pulled her out. She was thrown face down on the ground and handcuffed, her hands behind her, and then rolled on her back. Two officers then lifted her by arm pits and dragged her to the police panel. Esther Willie testified she was standing north of the Council Chambers when she heard the order to disperse given and began walking back to her car with her grandmother whe she was arrested by Officer Joan Russell. She was grabbed by the hair by the arresting officer and her arm was twisted. Plaintiff Marie Smith testified that she saw police throwing Ada Willie to the ground and then saw police chasing her son, Andrew Smith, who threw him to the ground after catching him. She was arrested while protesting the manner in which her son was arrested. It was determined from the defendant's deposition that Walter Jake arrested Marie Smith. Plain-

-374-

tiff Douglas Willie also testified that he was forcefully dragged from his vehicle.

Since none of the named plaintiffs resisted arrest, it stands to reason that any force applied in effecting the arrests should be minimal. This Court cannot find for plaintiff Marie Smith because no evidence of excessive force was established. As to the other plaintiffs not named below, action for excessive force is dismissed. Based upon the facts presented by the testimony and the physical evidence, this Court must rule in plaintiffs' Eva Willie, Douglas Willie, Ada Willie and Esther Keeswood favor. Again, the named defendants in their capacities as Navajo Police Officers acted beyond the scope of their authority and beyond the limit of 7 N.T.C. § 904 by using excessive force where no force was required. The Navajo Division of Public Safety and the Navajo Tribe will therefore be held liable. Such application of undue force results in a deprivation of liberty without due process./11

Malicious Prosecution

The Navajo Tribe, in establishing the Office of the Prosecutor, has taken from the arresting officers the responsibility of prosecuting the defendants. Therefore, the plaintiffs failed to state a claim against the police officers upon which relief may be granted. The responsibility for the prosecution must lie with the Office of the Prosecutor and not with the individual officers in this cause of action.

-375-

Defendants' Counsel urges this court to rule in favor of defendant Raymond Tso, Chief Prosecutor of the Navajo Nation, for absolute immunity. It is conceded that state prosecutors are clothed with absolute immunity and in some cases even if it is established that a prosecutor knowingly used false evidence to convict a person and that conviction is later reversed and the victims acquitted that prosecutor could not be sued. It is a frightening proposition which defendants counsel urges upon the court and cites Imbler v. Pachtman, 424 U.S. 409, 471 L.Ed2d 138, 96 S. Ct. 984. Additionally, Counsel urges the Court that the public prosecutor's immunity should be at par with judicial immunity. However frightening this proposition may be, the argument is a strong one. But the injury caused by an unconstitutional suppression of exculpatory evidence is substantial and on that basis the prosecutor should not be absolutely immune. This view is consistent with the Court of Appeals ruling in the Dennison v. T. G. & E. case. Based upon the evidence presented, the Court finds that the Prosecutor acted within the scope of his duties no matter how miserably prepared his cases may have been. Additionally, the Navajo Tribe needs a prosecutor absolutely insulated from the Executive Branch of the government. Only then will we be able to acquire a qualified prosecutor. For the reasons stated above, the cause of malicious prosecution will be dismissed entirely and the Prosecutor is clothed with qualified immunity.

Damages

This Court, in holding the named defendants liable in their

-376-

capacities as Navajo Police Officers for false arrest, false imprisonment and using excessive force in arresting the named plaintiffs, follows the holding in the T. G. & E. case by going beyond the legal fiction and making the real defendant liable for the actions of the named defendants. Therefore, judgment is entered against the named defendants in their capacities as Navajo Police Officers, Navajo Division of Public Safety and the Navajo Tribe for the unlawful arrests and imprisonment as follows: Allen Jim $500; Douglas Willie $500; Eva Willie $1000; Esther Keeswood $1000; Marie Smith $1000; and Andrew Smith $1000. For use of excessive force in arresting the plaintiffs, judgment is entered against the named defendants in their capacities as Navajo Police Officers, Navajo Division of Public Safety and the Navajo Tribe as follows: Douglas Willie $1000; Eva Willie $1000; Ada Willie $1000; and Esther Keeswood $1000; and legal fees in the amount of $835.29. Judgment is also entered against the defendants in their capacities as Navajo Police Officers and the Navajo Tribe for punitive damages resulting from use of excessive force in effecting the arrests of the named plaintiffs as follows: Douglas Willie $1000; Eva Willie $1000; Ada Willie $1000; and Esther Willie $1000. The arrest records of the named plaintiffs are hereby ordered expunged.

It must be remembered that this Court is bound by the legal principles established by our Court of Appeals in Dennison v. Tucson Gas & Electric Co. when it determined during the Kirk era that the Navajo Tribe was the only real defendant when employees of the Tribe act beyond the scope of their duties.

So ordered.

1.    "...The Judgment, if any shall be directed and entered against Peter MacDonald, Chairman, and the Navajo Nation." Dennison, et al. v. T. G. & E. et al. (1974) at 64

2.    1 Modern Constitutional Law at 287

3.    Navajo Tribal Council Resolution CF-4-76 at 5, passed and adopted February 17, 1976

4.    Lair v. State of Oklahoma, 316 P.2d 225

5.    Cf.  Sea Isle City v. Vinci, 34 N.J.Super. 273, 112 A.2d 18 (1955); People v. Caswell-Massey Co., 6 N.Y.2d 649, 160 N.E.2d 875 (1959); Cleveland v. Baker, 83 Ohio L.Abs. 502, 167 N.E.2d 119 (1960, App.)

6.    Dellums, et al. v. Powell, 566 F.2d 167 (1977)

7.    Ibid.

8.    State v. Lair, 316 P.2d 225 (Okla.); Washington Mobilization Committee v. Cullane, 566 F.2d 107 (1977)

9.    Washington Mobilization Committee v. Cullane, 566 F.2d at 120 (16)

10.   Law of Torts, Prosser, 4th Edition at 134

11.   Everett et al. v. City of Chester, Civ. A. No. 74-9211, U.S. Dist. Ct., E.D. Penn.; Reed v. Philadelphia Housing Authority, 372 F.Supp. 686, 689